**Glenn T. WINER, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 534, 2007.**

Supreme Court of Delaware.

Submitted: April 8, 2008.
Decided: June 10, 2008.

---

Nicole M. Walker, Esquire, Office of the Public Defender, Wilmington, DE, for Appellant.

Kevin M. Carroll, Esquire, Department of Justice, Wilmington, DE, for Appellee.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

JACOBS, Justice:

Glenn T. Winer ("Winer"), the defendant-below, appeals from the denial by the Superior Court of his motions to sever and for a judgment of acquittal. Winer was indicted on charges of first degree arson and criminal mischief (damaging tangible property in an amount less than $1,000), but was found guilty of third degree arson (a lesser-included offense) and criminal mischief. On appeal, Winer claims that the trial court erred in: (1) denying his motion for a judgment of acquittal; and (2) refusing to sever for trial the criminal mischief charge from the arson charge. We conclude that the Superior Court committed no error, and affirm.

### FACTS

On the evening of January 4, 2007, a fire started inside the building where the offices of Community Services Incorporated ("CSI") were located. It was later determined that the fire originated in the Human Resources office, then being occupied by Jeanne Gursky ("Gursky"), a CSI human resources manager.[1]

Deputy Fire Marshal Tripp Wagner ("Wagner") responded at the scene of the fire. During the course of his investigation, Wagner spoke with: (i) Winer, who was a program manager at CSI, (ii) Lakeva Watson ("Watson"), who was an education counselor for mentally challenged individuals at CSI, and (iii) Demetrius Taylor ("Taylor"), another CSI employee. Winer, Watson, Taylor, and Wagner all testified at the trial. Although their testimonies are sometimes difficult to reconcile, the facts next recited may be regarded as established.

Winer testified as follows: on January 4, 2007, he arrived at the CSI building around 6:30 p.m. because he was going on vacation the next day and wanted to pick up some paperwork, check his mail, and make sure there were no medications to be delivered to his clients. Winer entered the CSI building and went to the conference room where the mailboxes and medications were kept. While he was in the conference room, the fire alarm went off at which point he exited the building. Upon leaving the building, Winer encountered Watson.

Watson testified that, on the day of the fire, around 6:30 or 7:00 p.m., she arrived at the CSI building accompanied by a mentally challenged person who cleaned the CSI office two days a week. When they attempted to open the front door of the building, "a whole bunch of smoke" came out. Watson called 911 to report the fire. She did not know the exact address to report, however, and attempted (unsuccessfully) to determine the address by driving to the entrance of the development where the building was located. Watson then returned to the CSI building, where she encountered Winer and told him that the CSI building was on fire. Winer responded that he knew. Watson then gave Winer her cell phone and Winer provided the address of the building to the police. At trial, Watson testified that Winer was generally "friendly, a friend" but that on January 4, 2007 "[h]e did not look the same ... [h]e looked like he was high ... he did not speak." After finishing the call to 911, Watson called Taylor.

While Watson was on the telephone, Winer went back inside the building. Why he did that is unclear. Wagner testified that Winer made several conflicting statements about precisely which item he had

---

1. Gursky had tendered her resignation on December 12, 2006, and was going on a maternity leave starting January 12, 2007.

gone back inside to retrieve (his ear piece, his keys, or both), and that at some point Winer said "this does not look good for me, does it?"

After receiving Watson's telephone call, Taylor arrived at the CSI building. At trial Taylor testified as follows: water was running out the door, and Winer's pants were wet. Taylor went into the CSI building to check the office space and Winer followed him inside. Soon thereafter, the police and the firefighters arrived at the scene and ordered both Winer and Taylor to leave the building. Once Taylor and Winer were outside, the following conversation took place:

I asked [Winer] what happened? ... He was, like, nothing. I was, like, Glenn something happened. I said, just tell me the truth. Were you smoking or something? He was, like, no I stopped smoking, I quit smoking, like, a couple of weeks ago. He pulled out a pack of cigarettes and started smoking. He wasn't like himself that day at all. So I was, like, Glenn, what is going on? He was, like, nothing ... I have been working since New Years Eve on all this stuff. I said, Glenn, what the hell [are] you talking about? He was, like, man, I don't [have] time for this. I could care less if CSI burn the hell down. I got to get the F out of here. I have to pick my wife up.

After this conversation, Wagner approached Winer and asked him to describe what had happened. After determining that Winer should be detained and questioned more extensively, Wagner handcuffed Winer and searched him. A cigarette lighter was found on Winer's person, but the record does not disclose whether or not Winer had any keys on his person.

After the search, Winer was immediately escorted to the State Fire Marshal's office, where he was placed in a holding cell that was under video surveillance. While in custody, Winer was videotaped removing molding, wall paper, trim and baseboard from the holding cell walls. The damage he caused to the holding cell was approximately $150.

Wagner's investigation revealed that the fire had originated in Gursky's office. Wagner conducted a walk-through investigation of Gursky's office, in the course of which he saw "fire debris on a desk" and noticed that the overhead sprinkler system had been activated. Wagner was able to "rule out any electrical cause [of the fire and] also ... any type of light[n]ing strike." He ultimately determined that the "[f]ire was started by some type of open flame." No other forensic evidence was gathered from Gursky's office.[2]

Winer was indicted on charges of first degree arson and criminal mischief. On the day of trial, Winer moved to sever the two charges, arguing that they were "not of the same nature and do not share a similar modus operandi," and that "mere closeness in time does not make the two offenses of the same transaction or occurrence." Winer further contended that "[t]he jury may culminate [sic] the evidence of the different crimes in order to find guilt of one or the other of the alleged offenses and/or to infer a general criminal disposition of the [d]efendant, especially since the videotape which the State will likely seek to introduce as evidence of the Criminal Mischief shows [d]efendant being held for almost two (2) hours in a holding cell." The Superior Court denied the motion to sever, holding that "considering the

---

**2.** Taylor testified that the fire had probably started in Gursky's office because that was the only place where sprinklers had gone off.

temporal proximity and time of th[e] [criminal mischief] incident ... there's a good probability that the incident itself may be admissible at trial for other reasons allowable under [D.R.E.] 404(b)."

At trial, the State called Gursky, who testified that she and Winer had their "differences in the past" with respect to keeping and accounting for training vouchers. Winer and Gursky had recently spoken about missing training vouchers. During that incident Winer used expletives. After their conversation, Winer wrote an e-mail to Gursky, with a copy to CSI's executive director, telling Gursky that she needed to get her act together. Gursky considered Winer's e-mail "kind of verbally abusive." However, when Gursky informed Winer about her impending resignation, Winer told her that he was sorry to see her go and that he respected her for standing up to him. Finally, Gursky testified that on the day of the fire, she followed her routine practice and locked the door to her office at the end of the day. According to Gursky, only five other persons had access to her office: CSI's executive director, CSI's three program directors, and CSI's business manager. Gursky was uncertain whether all of those persons had a key. Wagner did not specifically determine who had a key to that office, but CSI's executive director told Wagner that all the keys had been accounted for.

At the close of the State's case, Winer moved for a judgment of acquittal. Winer

argued that the State's evidence was insufficient to sustain a conviction of arson, because the State did not establish that Winer had or could have been in Gursky's office, nor did it establish that Winer had a motive for starting the fire. The trial court reserved decision on Winer's motion.[3] After the jury found Winer guilty of the lesser-included offense of third degree arson, and of criminal mischief, the Superior Court denied the motion for acquittal, holding that the evidence—although largely circumstantial—was sufficient. This appeal followed.

## ANALYSIS

### I. Denial of The Motion For Judgment of Acquittal

█ The first issue is whether the Superior Court improperly denied Winer's motion for a judgment of acquittal. Winer claims that there was insufficient evidence to find him guilty of arson beyond a reasonable doubt. "We review *de novo* a trial judge's denial of a motion for a judgment of acquittal to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt of all the elements of a crime."[4] "For the purposes of this inquiry, this Court does not distinguish between direct and circumstantial evidence of defendant's guilt."[5]

Although he was indicted on the charge of first degree arson,[6] Winer was found

---

3. *See* Super. Ct.Crim. R. 21(a) and (b).

4. *Flonnory v. State*, 893 A.2d 507, 537 (Del. 2006) (emphasis added). A motion for judgment of acquittal should only be granted when there is "insufficient evidence" to sustain a guilty verdict. *See* Super. Ct.Crim. R. 29. *See also Vouras v. State*, 452 A.2d 1165, 1169 (Del.1982).

5. *Hardin v. State*, 844 A.2d 982, 989 (Del. 2004) (quoting *Cline v. State*, 720 A.2d 891, 892 (Del.1998)).

6. 11 *Del. C.* § 803 relevantly provides: "A person is guilty of arson in the first degree when the person intentionally damages a building by starting a fire or causing an explosion and when ... [t]he person knows of circumstances which render the presence of

guilty of the lesser-included offense of third degree arson.[7] The statutes defining both crimes require the jury to find beyond a reasonable doubt that the defendant "intentionally start[ed] a fire" which damaged a building. The only element of this offense in dispute is whether Winer intentionally started the fire. Although the largely circumstantial trial evidence on this element of the crime was weak, it was, nonetheless, sufficient to satisfy this high standard, because a rational trier of fact could have found beyond a reasonable doubt that Winer intentionally started the fire. This Court has consistently held that the State may prove a defendant's guilt exclusively through circumstantial evidence,[8] and that a jury may infer intent from the defendant's conduct.[9]

██ Here, it is undisputed that Winer was inside the CSI building when the fire alarm went off. Several witnesses placed Winer at the scene of the CSI fire, and testified about Winer's unusual behavior that day. Taylor testified that Winer "wasn't like himself that day at all." Watson testified that Winer "did not look the same" and "looked like he was high." At the scene, Winer made inconsistent statements. Winer told Watson that he knew that the CSI building was on fire, but he told Taylor that he (Winer) did not know what had happened because he had not been inside the building. Winer also told Taylor that he had quit smoking, yet immediately thereafter lit a cigarette in front of Taylor. Winer's statements to Wagner about his means of, and reasons for, returning inside the building were also conflicting. Lastly, a cigarette lighter that could have provided the type of "open flame" necessary to start the fire was found on Winer's person.[10] This evidence was sufficient, in our view, to support the jury's verdict of guilty.

The evidence Winer relies upon to argue that a rational trier of fact could not have concluded that he started the fire in Gursky's office, is too speculative to constitute a basis for reversal. Winer first submits that, if he had been in Gursky's office, more than the bottom of his pant legs would have been wet, because the sprinkler in that office sprayed downward in the shape of a cone. This argument proceeds from a faulty premise. Although Taylor testified that Winer's pant legs were "rolled up" and that Winer's pants "were wet," from this it does not necessarily follow that Winer's upper clothes were not wet.

Winer next argues that he could not have accessed Gursky's office because he did not have a key. The record shows that five persons had access to Gursky's office and that after the fire all the keys to that office were accounted for. But, the record does not disclose how many keys to that office existed, who had them, or where

---

another person not an accomplice therein a reasonable possibility."

7. 11 *Del. C.* § 801(a) relevantly provides: "A person is guilty of arson in the third degree when the person recklessly damages a building by intentionally starting a fire or causing an explosion."

8. *See, e.g., Seward v. State,* 723 A.2d 365, 369 (Del.1999); *Davis v. State,* 706 A.2d 523, 525 (Del.1998); *Robertson v. State,* 596 A.2d 1345, 1355 (Del.1991).

9. *See, e.g., Plass v. State,* 457 A.2d 362, 365 (Del.1983) ("As a matter of common sense, in judging the sufficiency of the evidence as to state of mind, the jury must be able to weigh the conduct of the defendant.").

10. Wagner explained that "open flame" means "[a]ctual red flame that is applied to some kind of combustible," "no matter how you apply it ... with a match, *cigarette lighter,* lighting something else on fire holding it up to it." (emphasis added).

those keys were kept. Gursky's testimony also suggests that a key was kept somewhere in the office where other persons might have had access to it.[11] In light of the evidence presented, even if Gursky's office door was locked[12] and all the keys were accounted for, that alone would not create a reasonable doubt as to Winer's guilt.

Finally, Winer relies on the State's failure to establish that he had a motive to set fire to Gursky's office. The State's theory was that Winer's motive related to his dispute with Gursky over training vouchers and to Winer having received two negative write-ups from his employer. Winer urges that he and Gursky had apparently resolved their differences, and that CSI did not want to terminate him. Even so, the record shows that Winer was not particularly content with his employment at CSI. Winer had tendered his resignation, and at the scene of the fire, he told Taylor that he "could care less if CSI burn[s] the hell down," and that he "ha[d] been working since New Years Eve all this stuff."[13] Although the State's case would have been stronger had Winer's motive been clearly established, the State was not required to prove motive as an element of arson.

In conclusion, the evidence presented by the State, although circumstantial, pointed only to Winer. The jury simply did not accept Winer's version of the events, nor did it believe that the fire could have been started by someone else or had some different cause. Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational jury could have found that Winer had intentionally started the fire at the CSI building.

## II. Denial of The Motion to Sever

 The second issue is whether the Superior Court erred in denying Winer's motion to sever the first degree arson charge from the criminal mischief charge. This Court reviews a decision on a motion to sever for abuse of discretion.[14] The denial of a motion to sever "will not be disturbed unless [the] defendant demonstrates a 'reasonable probability' that the joint trial caused 'substantial injustice.' "[15] For the reasons next discussed, we find that Winer has not sustained that burden.

Superior Court Criminal Rule 8(a) permits the joinder of two or more offenses in the same indictment where those offenses "are of the same or similar character or are based on the same act or transaction. . . ."[16] Superior Court Criminal Rule

11. Gursky stated: "[The executive director] had his own key. [The business manager] probably had her own key. *Three program directors knew where the key was.* I get the key from [the executive director], I am not sure if they had the key to my office or not." (emphasis added).

12. Gursky testified that her routine practice was to lock her office door at the end of the day, but she did not testify that she had locked that door on the particular day of the fire. But, Taylor testified that when he inspected the office space, Gursky's office door was closed.

13. The fire occurred on January 4, 2007. That was the last day before Winer's vacation

and eight days before Gursky's departure on maternity leave.

14. *Kemske v. State,* 2007 WL 3777, at *3 (Del. Supr.) (citing *Wiest v. State,* 542 A.2d 1193, 1195 (Del.1988)).

15. *Walker v. State,* 2002 WL 122643, at *1 (Del.Supr.) (citing *Bates v. State,* 386 A.2d 1139, 1141 (Del.1978)).

16. Super. Ct.Crim. R. 8(a) pertinently provides: "Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connect-

14 allows the trial court to sever offenses and hold separate trials if it appears that a defendant will be prejudiced by the joinder.[17] Winer argues that he was prejudiced by the joinder because there was a reasonable probability that the jury cumulated the evidence of the two separate crimes to find him guilty of the arson offense and/or to infer that he had a general criminal disposition.[18]

■ Winer first claims that the two offenses were not of the "same character" or otherwise "connected together," as Rule 8(a) required. We disagree. The offenses of "damag[ing] a building by starting a fire"[19] and of damaging "tangible property consisting of wall trim and paint belonging to the State Fire Marshal or another person" in an amount of less than $1,000,[20] are both "Offenses Involving Property." Both are contained in the same subsection of the Delaware Criminal Code (Arson and Related Offenses). Therefore, those two offenses are "of the same or similar character" under Rule 8(a). Moreover, because Wagner testified that Winer was escorted directly from the scene of the fire to the State Fire Marshal's office where he was videotaped damaging the holding cell's walls, those two offenses were also "connected together" by temporal proximity.[21]

Winer next claims that the two offenses should have been severed because, to prove that Winer was guilty of criminal mischief, the State would be free to introduce evidence that was otherwise not relevant to the arson charge, namely, the videotape showing Winer damaging the walls of the holding cell. Specifically, Winer takes issue with the trial court's ruling that "there's a good probability that the incident itself may be admissible at trial for other reasons allowable under [D.R.E.] 404(b)." That ruling, Winer argues, was incorrect because the videotape could not be used as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident" with respect to the arson charge.[22] Winer did not object to the admission of the videotape on evidentiary or severance grounds.[23] Because the issue was not fair-

---

ed together or constituting parts of a common scheme or plan."

**17.** Super. Ct.Crim. R. 14 relevantly provides: "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

**18.** *See Wiest*, 542 A.2d at 1195 (citing *State v. McKay*, 382 A.2d 260, 262 (Del.Super.1978)).

**19.** 11 *Del. C.* §§ 801(a) and 803 (defining first degree arson and third degree arson).

**20.** *See* 11 *Del. C.* § 811.

**21.** *See State v. Gomez*, 2007 WL 1930425, at *2 (Del.Super.) (holding that "the geographical and temporal proximity of the events argues in favor of granting joinder."). Here, the Superior Court held that: "[C]onsidering the temporal proximity and time of this incident, the one that counsel was seeking to sever and potential relationship, ... there's a good probability that the incident itself may be admissible at trial for other reasons allowable under [D.R.E.] 404(b). And, therefore, I'm not going to sever the charges. It will proceed [...] The motion is denied for those reasons."

**22.** D.R.E. 404(b) states: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

**23.** The record indicates that when the videotape was offered by the State, Winer initially had an objection on authentication grounds. Once the prosecutor authenticated the video-

ly presented to the trial court, it will not be entertained on this appeal.[24]

Winer next contends that the presentation of that videotape to the jury was prejudicial because it permitted the jury to infer a general criminal disposition and find Winer guilty of arson where it would otherwise have found him not guilty. If in fact the jury had inferred a general criminal disposition on Winer's part because of the videotape evidence showing that he committed criminal mischief, it is likely that the jury would also have found him guilty as charged on the first degree arson offense. Instead, the jury convicted Winer of the lesser included offense of third degree arson.[25] That verdict diminishes the force of Winer's argument that the jury cumulated or otherwise improperly considered the evidence of criminal mischief to convict him of arson. Moreover, the prejudice, if any, was not significant, because the videotape presented to the jury was a shortened and redacted version of the two hour recording, and Winer never requested a jury instruction as to the permissible uses (by the jury) of the videotape.

Finally, Winer claims that the joinder of the two offenses caused him substantial prejudice because it enabled the prosecution to make the following improper statement about Winer's character (based on the criminal mischief evidence) during closing argument:

[Winer] wants you to believe he never lost his keys, [or that] he never said he lost his keys. This is the defendant who we have the tape for the criminal mischief piece of this evidence. That same man on that tape . . . sat up there and told you one story, [told] Deputy Wagner three stories, [and] is . . . asking you to believe that everyone else got it wrong [. . .] Remember on that tape [Winer] took the wall trim, he took the wallpaper up to the camera. That's the man who's asking you to believe[,] based on his four different stories in contrast to the one story that everyone else has told[,] that he's not guilty.

Statements made by the prosecution during closing arguments without an objection from the defense—as occurred here—are reviewed for plain error.[26] Under that standard, the error complained of must be "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[27] Here, the prosecutor made reference to the evidence of the criminal mischief (the videotape showing Winer damaging property of the State Fire Marshal) to suggest that Winer was a dishonest person and that, as a result, the jury should not believe his account of the events. That reference might arguably have constituted plain error if Winer's credibility had not otherwise been adversely impacted, especially—and signif-

---

tape, defense counsel had no further objections to the admission of the videotape.

24. See Supr. Ct. R. 8. Moreover, the language used by the trial court (there is a good *probability* that the evidence of the criminal mischief *may* be admissible) clearly indicates that the court did not make a final ruling that the videotape was admissible under D.R.E. 404(b). The trial court was merely hypothetically assessing whether the videotape would be admissible under D.R.E. 404(b) in a severed trial. That was a proper consideration for purposes of assessing the potential preju-

dice resulting from the joinder. See State v. Sisson, 2005 WL 914464, at *3 (Del.Super.) (citing Skinner v. State, 575 A.2d 1108, 1118 (Del.1990); Bates v. State, 386 A.2d 1139, 1142 (Del.1978)).

25. See Massey v. State, 2008 WL 383192, at *6 (Del.Supr.).

26. Czech v. State, 945 A.2d 1088, 2008 WL 699074, at *6–7 (Del.Supr.).

27. Wainwright v. State, 504 A.2d 1096, 1100 (Del.1986).

651

icantly—by his own conflicting statements to various persons at the scene of the fire. Given Winer's conflicting statements, the prosecutor's closing argument was not so prejudicial as to "jeopardize the fairness and integrity of the trial process."

For these reasons, the trial court did not abuse its discretion in denying Winer's motion to sever.

## CONCLUSION

For the reasons set forth, the judgments of the Superior Court are affirmed.