IN THE SUPREME COURT OF THE STATE OF DELAWARE

MARK BARTELL, §
§ No. 271, 2017
   Defendant Below, §
   Appellant, § Court Below—Superior Court
§ of the State of Delaware
   v. §
§ Cr. ID No. .511001595(K)
STATE OF DELAWARE, §
§
   Plaintiff Below, §
   Appellee. §
§

Submitted: January 17, 2018
Decided: March 29, 2018

Before **STRINE**, Chief Justice; **VALIHURA**, and **TRAYNOR**, Justices.

**O R D E R**

This 29th day of March, 2018, having considered the briefs, the record below, and the argument of counsel, it appears to the Court that:

(1)   Appellant Mark Bartell was indicted on two counts of rape in the first degree and one count each of rape in the fourth degree, terroristic threatening, and offensive touching. The victim was Bartell's wife. Six months later, but still eight months before trial, he was further charged with two counts of criminal solicitation in the second degree, which alleged that while he was awaiting trial, he solicited two of his fellow inmates to murder his wife so that she could not testify against him.

(2)     Bartell moved to sever the criminal solicitation charges for trial on the grounds that the joinder of those charges with the underlying offenses "impugned his character"[1] and "forced [the jury] to make an improper inference as to [his] criminal disposition."[2]  The Superior Court denied the motion and, after a six-day jury trial, Bartell was convicted on all but the terroristic-threatening and offensive-touching charges.  He was sentenced to seventy-five years of incarceration followed by various levels of probation.

(3)     In this direct appeal, Bartell raises two claims of error.  First, he asserts that the Superior Court erred when it denied his motion to sever.  He claims to have suffered substantial prejudice because the State was permitted to use the criminal solicitation evidence to impugn his character and draw an improper inference as to his general criminal disposition.  Second, Bartell contends that he was deprived of a fair trial when the Superior Court failed to declare a mistrial after witnesses injected inadmissible, irrelevant and prejudicial testimony about his past conduct.

(4)     Under Superior Court Criminal Rule 8(a), "[t]wo or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or

---

[1]     Opening Br. 2.
[2]     *Id.* at 6.

2

constituting parts of a common scheme or plan." But if it appears that a defendant or the State will suffer prejudice by a joinder of offenses, the Superior Court may sever the offenses and order separate trials or provide such other relief as justice requires.[3]

(5) This Court reviews the Superior Court's denial of a motion to sever for abuse of discretion.[4] "The trial court's decision to deny a motion to sever will be reversed only if the defendant establishes a 'reasonable probability' that the joint trial created 'substantial injustice.'"[5] The defendant has the burden of demonstrating prejudice, which must be more than "mere hypothetical prejudice."[6]

(6) We have recognized that "a crucial factor to be considered [in the prejudice analysis] is whether the evidence of one crime would be admissible in the trial of the other crime, because if it were admissible, there would be no prejudicial effect in having a joint trial."[7] Evidence of other crimes is generally admissible if it has "independent logical relevance" and its probative value is not outweighed by the danger of unfair prejudice.[8]

---

[3]     Del. Super. Ct. Crim. R. 14.
[4]     *Jackson v. State*, 990 A.2d 904, 909 (Del. 2007).
[5]     *Ashley v. State*, 85 A.3d 81, 84 (Del. 2014) (quoting *Winer v. State*, 950 A.2d 642, 648 (Del. 2008)).
[6]     *Skinner v. State*, 575 A.2d 1108, 1118 (Del. 1990).
[7]     *Garden v. State*, 815 A.2d 327, 333–34 (Del. 2003) (citing *Wiest v. State*, 542 A.2d 1193, 1195 n.3 (Del. 1988)).
[8]     *Getz v. State*, 538 A.2d 726, 730 (Del. 1988) (quoting *Diaz v. State*, 508 A.2d 861, 865 (Del. 1986)).

(7)     The Superior Court astutely drew a parallel between the facts of this case and those presented in *Ashley v. State*.[9]  In that case, the defendant was charged with several sex offenses against an 11-year old.   After he was indicted, the defendant participated in a scheme to bribe the child's mother into withdrawing her cooperation and declining to testify, which led to further charges of bribery and related offenses.  The defendant's motion to sever the new charges was denied by the Superior Court, and the defendant was found guilty of numerous offenses.  On appeal, we held that the motion was properly denied. First, we recognized that the bribery charges met the criteria for joinder under Rule 8(a) because the charges— which arose from the defendant's attempt to stop the victim's mother from testifying against him on the underlying charges—were "based on the same act or transaction" as the underlying charges.[10]   Second, we observed that the defendant was not prejudiced by the joinder of the bribery charges because evidence of  that conduct would have been admissible in a stand-alone trial on the underlying charges for the purpose of showing consciousness of guilt.  Finally, we pointed out that if the charges had been severed, the State would have had to call several of the same witnesses from the trial on the underlying charges to prove motive and interest in

---

[9]     85 A.3d 81 (Del. 2014).
[10]     *Id.* at 85.

4

connection with the bribery charges, which would have wasted judicial resources and subjected the witnesses to a needless second turn on the stand.

(8)    The same dynamics are present here.  Bartell's solicitation of the two prison inmates to kill his wife was admissible on the original charges to show his consciousness of guilt.  Had the solicitation charges been severed, the State would have had to call many of the same witnesses from the trial of the underlying charges to show why Bartell was offering the inmates money to kill his wife.

(9)    Bartell raises the possibility that the evidence introduced to prove his guilt on the solicitation charges—which included the fact that the solicitation occurred while Bartell was jailed—may have allowed the jury to make an improper inference of guilt from the fact that had been detained prior to trial.  But as we observed, even if the underlying charges were tried separately, his jury was going to hear of the conduct giving rise to the solicitation charges as evidencing his consciousness of guilt of the underlying charges.  Bartell's concern that the jury could misuse the knowledge that he had been detained prior to trial is a valid one, but the trial court met his concern by instructing the jurors two separate times that they should not infer that pretrial detention had any bearing on his guilt.  In sum, Bartell has not demonstrated that he suffered substantial prejudice by virtue of the joinder of offenses.

(10) Bartell also claims for the first time on appeal that the Superior Court should have declared a mistrial because of "the injection of unsolicited, inadmissible and highly prejudicial testimony from multiple State witnesses, regarding Bartell's prior history."[11] Because he did not move for a mistrial below, we review his contention only for plain error.[12]

(11) During the trial, a nurse who examined Bartell's wife testified that his wife had told her that "this has happened before," despite an earlier ruling that the wife's statement to the nurse was inadmissible. Bartell's counsel promptly objected. At sidebar, the two sides suspected that the nurse was testifying from a document that had not been properly redacted to remove the offending statement, and the following exchange occurred:

> THE COURT: Well, at this stage, so we don't have any more difficulties, maybe we'll excuse the jury for a moment . . . and you can review what [the nurse] has up there carefully. And then we'll have them back in and I'll sustain the objection and give a curative instruction, more of a disregard instruction, unless a curative instruction is specifically requested. . . . I'm going to, in fact, sustain that [objection] now and do that.
>
> [DEFENSE COUNSEL]: That is fine.
>
> THE COURT: So the defense is in agreement with that?
>
> [DEFENSE COUNSEL]: Yes, Your Honor.[13]

---

[11] Opening Br. 8.

[12] *Cruz-Webster v. State*, 155 A.3d 833, 2017 WL 464536, at *4 (Del. 2017) (unpublished table decision).

[13] App. to Opening Br. A64.

6

(12)   Later, during the State's direct examination of Bartell's sister, Mary Davis, the State played an audio recording of a prison phone call between her and Bartell.  During the call, the sister made reference to a "PFA"— shorthand for a protection-from-abuse order—that Bartell's wife had against him.  Bartell did not object.  Shortly thereafter, in an answer that was not directly responsive to the prosecutor's question, Davis mentioned that "[t]here was a protection order,"[14] without specifying the parties or the identity of the person against whom the order was entered.  Once again, Bartell did not object.  Only when the prosecutor voluntarily brought to the court's attention the two inadvertent references to PFA orders and his understanding that they violated a prior *in limine* order did Bartell's counsel address them, and he downplayed their significance, noting that "Davis mentioned [a] protective order, not specifically a PFA, protection from abuse order" and that she did not object when either reference was made.  The court then asked defense counsel how she wished to proceed:

> THE COURT:  . . . [T]he Court's satisfied it was actually inadvertent on both parts as far as violating the order . . . [I]t would be up to the defense whether you want a curative instruction or not because many jurors, they may or may not be able to know when there's an isolated reference to a PFA what that even is.
>
> [A]re you going to want a curative instruction at this point or not?
>
> DEFENSE COUNSEL:  I don't think so, Your Honor, at this point.

---

[14]     *Id.* at A115.

7

THE COURT:  The defense is making strategic --

DEFENSE COUNSEL:  Yes, Your Honor.[15]

(13)   In the wake of each of the improper references upon which Bartell now bases his claim that the Superior Court should have *sua sponte* declared a mistrial, Bartell's preferred remedial response was adopted by the court.  In the first instance, Bartell agreed that a curative instruction was sufficient and, in the second, made a strategic decision to decline the court's offer to give an instruction.

(14)   To warrant reversal under the plain-error standard, the error must be "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[16]  This means that the error must have affected Bartell's trial.[17] And the burden of demonstrating that the error is prejudicial is on Bartell.[18]

(15)  Bartell has not carried his burden of showing that the three inappropriate references, all of which were inadvertent and two of which—the PFA references—only vaguely pointed accusatory fingers at Bartell, resulted in substantial prejudice.  The principal evidence of Bartell's guilt was the detailed testimony of his wife, who had promptly reported the assault to the police and then recounted the brutal facts to the nurse who treated her later that same day at the

---

[15]     *Id.* at A118.
[16]     *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).
[17]     *Brown v. State*, 897 A.2d 748, 753 (Del. 2006).
[18]     *Id.*

8

hospital. The jury also heard the chilling testimony of the two prison inmates who Bartell attempted to hire to "make the case go away" by murdering his wife,[19] which was buttressed by a prison phone call recording in which Bartell told his sister that "[he] needed somebody to take her out."[20] What is more, Bartell's claim of prejudice is undermined by the fact that the jury acquitted him of the terroristic-threatening and offensive-touching charges and, on the rape in the first degree charge, found him guilty of the lesser included offenses of rape in the second degree—a verdict that could scarcely be attributed to an inflamed jury. In short, there was no plain error here.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:


*/s/ Gary F. Traynor*
Justice

---

[19]    App. to Opening Br. A100.
[20]    *Id.* at A145.

9