Iziah ASHLEY, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 317, 2013.

Supreme Court of Delaware.

Submitted: Feb. 5, 2014.
Decided: Feb. 11, 2014.

Santino Ceccotti, Esquire, Office of the Public Defender, Wilmington, Delaware, for appellant.

Elizabeth R. McFarlan, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before HOLLAND, JACOBS and RIDGELY, Justices.

HOLLAND, Justice:

The defendant-appellant, Iziah Ashley ("Ashley"), appeals from final judgments of the Superior Court, following a jury trial, and convictions of two counts of Rape in the Second Degree, three counts of Unlawful Sexual Contact with a Child Under the Age of 13, Bribing a Witness, Interfering with a Child Witness, and Conspiracy in the Second Degree.

Ashley raises three claims in this direct appeal. Ashley contends: first, that the trial court abused its discretion when it denied severance of several claims because a single trial did not serve the judicial economy and caused substantial prejudice to Ashley; second, that the trial court abused its discretion and violated Ashley's right to a fair trial when it refused to grant a mistrial or issue a curative instruction when the State elicited highly prejudicial testimony from the victim's mother; and, third, that the cumulative impact of all of the errors amounts to plain error.

We have concluded that Ashley's claims are without merit. Therefore, the judgments of the Superior Court must be affirmed.

### Facts

In June 2011, the complainant in this case, eleven-year old SB,[1] was living with her grandparents in a house in Wilmington. Also living in the house were SB's little sister, SB's Aunt, Briana Maddox, Maddox's nineteen-year old boyfriend, Iziah Ashley, and their infant daughter. At the time, SB's mother, Renada, was living in Claymont with her two sons and their father.

In September 2011, Renada had a conversation with SB regarding her relationship with Ashley. SB told her mother that Ashley had taken advantage of her sexually multiple times. In March 2012, Detective Cecilia Ashe of the Wilmington Police separately interviewed SB and Ashley. In SB's interview, she stated that Ashley made her give him oral sex four times, and that he had digitally penetrated her and touched her breasts. In his interview, Ashley admitted that he had groped SB's chest and that he had inserted his penis in SB's mouth twice.

Ashley was arrested in March 2012 and later indicted by a grand jury on four counts of Rape in the Second Degree, one count of Rape in the Fourth Degree, four counts of Unlawful Sexual Contact in the First Degree, and one count of Continuous Sexual Abuse of a Child. Trial was set to take place in January 2013. Before trial, Maddox along with Ashley's aunt, Robin Johnson, made contact with Renada and offered her $100 to not bring SB to trial. The two women presented to Renada a letter stating that she was withdrawing her cooperation and declining to testify. In exchange for signing the letter and not bringing SB to court, Renada was given $100.

Thereafter, the police discovered text messages between Ashley and Maddox referring to the letter and Renada was arrested for her actions. Specifically, one of the text messages stated that Renada "said she will take the 150." In February 2013, the grand-jury reindicted Ashley for

---

1. Pseudonyms are assigned for the complain-   ant pursuant to Supreme Court Rule 7(d).

Bribing a Witness, Interfering with a Child Witness, and Conspiracy in the Second Degree for the alleged part he played in compensating Renada for her cooperation. The State sought and received a material witness warrant for Renada, and a new trial date was set for March 2013.

Before trial, Ashley moved to Sever the three charges added in the February 2013 indictment. The trial court denied the motion, and the case proceeded to trial. During trial, the trial judge, unpersuaded by Ashley's argument that prejudicial testimony had been admitted, denied his motion for a mistrial. At the close of the four-day trial, the jury found Ashley guilty of Rape Second Degree, three counts of Unlawful Sexual Contact with a Child, Bribing a Witness, Interfering with a Child Witness, and Conspiracy in the Second Degree. Ashley was sentenced to an aggregate 136 years in prison, suspended after fifty years for two years probation.

### Issues on Appeal

■ On appeal, Ashley contends that the trial court abused its discretion by denying his Motion to Sever the charges, by denying his Motion for a Mistrial, and by refusing to issue a curative instruction after Renada's testimony was heard. He also argues that even if this Court concludes that each of his first two claims, standing alone, do not constitute reversible error, the cumulative impact of both errors

amounts to plain error. This Court reviews a trial court's "denial of a motion to sever for abuse of discretion." [2] We also review a trial court's denial of a motion for mistrial for abuse of discretion. [3]

### Severance Properly Denied

■ "The trial court's decision to deny a motion to sever will be reversed only if the defendant establishes a 'reasonable probability' that the joint trial created 'substantial injustice.' " [4] Superior Court Rule 8(a) permits the joinder of two or more offenses in the same indictment, whether felonies or misdemeanors or both, if the offenses "are of the same or similar character or are the based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." [5] Under Superior Court Rule 14, however, a trial court may grant severance if the defendant is prejudiced by the joinder. [6]

■ Delaware law recognizes three situations in which prejudice from joinder arises: first, when the jury might cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find; second, when the jury might use the evidence of one of the crimes to infer a general criminal disposition of the defendant in order to find guilt of the other crime or crimes;

2. *Jackson v. State*, 990 A.2d 1281, 1285 (Del. 2009).

3. *Chambers v. State*, 930 A.2d 904, 909 (Del. 2007).

4. *Winer v. State*, 950 A.2d 642, 648 (Del.2008) (citing *Walker v. State*, 2002 WL 122643, at *1 (Del. Jan. 24, 2002)).

5. Super. Ct.Crim. R. 8.

6. *See* Super. Ct.Crim. R. 14 ("If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney general to deliver to the court for inspection in camera any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial.").

and, third, when the defendant might be subject to embarrassment or confusion in presenting different and separate defenses to different charges.[7] "[A] crucial factor to be considered in making a final determination on the motion should be whether the evidence of one crime would be admissible in the trial of the other crime."[8] Further, it is "the defendant [who] has the burden of demonstrating such prejudice and mere hypothetical prejudice is not sufficient."[9] "The mere fact that the crimes were 'separate', and were committed against different individuals with a lapse of time between them, does not require severance."[10] Ultimately, the court must balance the rights of the accused against the legitimate concern for judicial economy.[11]

█ In Ashley's case, the record reflects that the trial court did not abuse its discretion by denying severance. The later-indicted charges—Bribing a Witness, Interfering with a Child Witness, and Conspiracy in the Second Degree—all arose from Ashley's attempt to stop SB from testifying against him. Accordingly, these charges were "based on the same act or transaction."[12] The State would also have been permitted to admit evidence about Ashley's contact with his girlfriend for the purpose of showing consciousness of guilt. Further, the State would have had to call several of the same witnesses to show motive and intent on the part of Ashley in order to prove the later-indicted charges.

Because the State would have had to retry part of the rape case against Ashley, the trial court appropriately joined the charges in the interest of judicial economy. Moreover, the trial court instructed the jury that they were not to accumulate the evidence presented. The fact that the jury acquitted Ashley on several counts shows that the jury followed the trial court's instructions.[13] Ashley's showing that the bribery and conspiracy took place at a different time than the sexual assaults is not enough to show prejudice. Thus, Ashley has not met his burden of proving a reasonable probability of prejudice, and his first claim must fail.

### Mistrial Properly Denied

█ Ashley next contends that the trial court abused its discretion by denying his motion for a mistrial and that the failure to give a curative instruction made it impossible for the jury to remain impartial. A mistrial is appropriate "only where there is 'manifest necessity' or the 'ends of public justice would otherwise be defeated.'"[14] "When a trial judge rules on a mistrial application, that decision should be reversed on appeal only if it is based upon unreasonable or capricious grounds."[15]

█ "This Court has repeatedly held that even when prejudicial error is committed, it will usually be cured by the trial judge's instruction to the jury

7. *Wiest v. State*, 542 A.2d 1193, 1195 (Del. 1988).

8. *Id.* at 1196 n. 3.

9. *Skinner v. State*, 575 A.2d 1108, 1118 (Del. 1990).

10. *Id.* (citing *McDonald v. State*, 307 A.2d 796, 798 (Del.1973)).

11. *Mayer v. State*, 320 A.2d 713, 717 (Del. 1974).

12. *See* Super. Ct.Crim. R. 8.

13. *See Wainer v. State*, 2005 WL 535010, at *2 (Del. Feb. 15, 2005) ("[T]he jury's inability to convict Wainer of the Burglary charge demonstrates that the jurors were able to consider the evidence rationally and without bias.").

14. *Id.*

15. *Revel v. State*, 956 A.2d 23, 27 (Del.2008) (citations omitted).

to disregard the remarks." [16] If curative instructions are not given, "reversal is required whenever the reviewing court cannot say that the error was harmless beyond a reasonable doubt." [17] Determining harmless error requires this Court to "weigh the significance of the error against the strength of the untainted evidence of guilt to determine whether the error may have affected the judgment." [18]

■ At trial, the State questioned SB's mother, Renada, about receiving money in exchange for keeping her daughter from testifying at trial. The State asked why she did not bring SB to the previously scheduled trial:

Prosecutor: Why Not?

[Renada]. My Sister.

Prosecutor: Who is your sister?

[Renada]. Briana Maddox. She had spoke to me and told me that [Ashley] was going to take a plea and that there wasn't going to be a court date.

. . . .

Prosecutor: Was there any reason . . . why you thought he took the plea?

[Renada]. I thought that he had took [sic] the plea because of the fact that I knew that previously he had already admitted guilt.

Defense Counsel immediately objected to this line of questioning. A sidebar was held in which the defense asked for a curative instruction. The court, while warning the prosecutor to "get off the topic," refused to give a curative instruction stating: "I don't think we've been that far yet" and that "the first statement that the State elicited . . . [was] not hearsay because it was not offered for the truth of the matter asserted, it was offered to demonstrate motivation." The court also denied defense counsel's motion for a mistrial. Ashley now claims that this testimony improperly allowed the jury to infer guilt on the rape charges. Specifically, he argues that the first statement was hearsay and the second was unfairly prejudicial to Ashley.

Turning first to the claim of hearsay, under Rule 801(c) of the Delaware Rules of Evidence, hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." [19] "Where a statement is hearsay, the Delaware Rules of Evidence prohibit the admission of the statement unless an applicable exception applies." [20] But where the statement is introduced for some purpose other than to prove the truth of the matter, it is not hearsay. [21]

16. *Smith v. State*, 913 A.2d 1197, 1218 (Del. 2006) (citing *Pennell v. State*, 602 A.2d 48, 52 (Del.1991)).

17. *Van Arsdall v. State*, 524 A.2d 3, 11 (Del. 1987) (internal quotation omitted).

18. *Capano v. State*, 781 A.2d 556, 597 (Del. 2001).

19. D.R.E. 801.

20. *Edwards v. State*, 925 A.2d 1281, 1285–86 (Del.2007) (citation omitted).

21. *Cannon v. State*, 947 A.2d 1120 (TABLE), 2008 WL 1960131, at *2 (Del.2008); *see also Edwards*, 925 A.2d at 1291 (finding out-of-court statement admissible because it was not offered to prove that defendant did not shoot the victim, but to impeach the credibility of a State's witness who had testified that defendant had admitted his involvement in the crime to him); *Whalen v. State*, 434 A.2d 1346, 1355 (Del.1981) (finding out-of-court statements admissible to show why police believed defendant was a suspect and were not intended to show that the statements were true).

■ The record reflects that the trial judge properly found that Renada's first statement was not hearsay because it was not offered for the truth of the matter asserted. Instead, the statement showed Renada's motivation for not bringing her daughter to trial. Further, Renada's statement was not unduly prejudicial because the jury had already heard Ashley admit to having sexually assaulted SB twice. Thus, denying the motion for a mistrial was within the discretion of the trial court.

■ Assuming, *arguendo*, that Renada's testimony was improperly admitted without a curative instruction, any error was harmless beyond a reasonable doubt. The jury had already heard Ashley admit his guilt of sexually assaulting SB in his recorded interview. Further, SB herself testified in detail about her sexual contact with Ashley. More importantly, the jury acquitted Ashley of several crimes charged, even after hearing the testimony at issue. It is unreasonable to believe that the outcome of the case would have been different if a curative instruction had been given.

### Cumulative Error Argument

■ Finally, Ashley contends that the cumulative impact of the errors amounts to plain error. "[W]here there are several errors in a trial, a reviewing court must weigh the cumulative impact to determine whether there was plain error." [22] The plain error standard "is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice." [23] Where there are no individual errors, however, the cumulative claim must fail.[24]

In this case, an examination of the record establishes that Ashley's cumulative error claim is without merit. Because the later-indicted charges were sufficiently tied to the previously-indicted charges against Ashley, the denial of severance was proper and not an error. Nor did the trial court err by denying Ashley's Motion for a Mistrial, because the testimony only repeated what the jury had already heard from Ashley himself. For the same reason, the failure to provide a limiting or curative jury instruction was not unfairly prejudicial.

### *Conclusion*

The judgments of the Superior Court are affirmed.

22. *Wright v. State*, 405 A.2d 685, 690 (Del. 1979) (citation omitted).

23. *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986) (citing *Bromwell v. State*, 427 A.2d 884, 893 n. 12 (Del.1981)).

24. *See Cruz v. State*, 628 A.2d 83 (TABLE), 1993 WL 227080, at *9 (Del. June 4, 1993).