# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No. 1203020401 |
| | ) | |
| | ) | |
| IZIAH ASHLEY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Submitted: March 11, 2016
Decided: April 8, 2016

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED.

Annemarie H. Puit, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Natalie S. Woloshin, Esquire, 3200 Concord Pike, Wilmington, Delaware, Attorney for Defendant Iziah Ashley

PARKER, Commissioner

Defendant Iziah Ashley, through counsel, filed a Rule 61 Motion for Postconviction Relief. In the motion, Defendant claims that his trial counsel was ineffective for failing to seek the suppression of his videotaped interview during which he confessed to certain unlawful acts.

## BACKGROUND AND PROCEDURAL HISTORY

Ashley was charged by indictment with various sexual and witness tampering offenses as they related to a S.B.[1], a victim who was 11 years old in 2011, and 13 years old at the time of trial in 2013. The State alleged that Ashley engaged in a series of sexual liaisons with S.B. and that, after said sexual liaisons were discovered, he attempted to influence certain witnesses not to testify at trial.

Trial began on March 5, 2013 and ended on March 11, 2013. On March 11, 2013, following a four day Superior Court jury trial, Ashley was convicted of two counts of Rape in the Second Degree, three counts of Unlawful Sexual Contact with a Child Under the Age of 13, Bribing a Witness, Interfering with a Child Witness and Conspiracy in the Second Degree.

The jury found Ashley not guilty of two counts of Rape in the Second Degree, one count of Rape in the Fourth Degree, one count of Unlawful Sexual Contact with a Child Under the Age of 13, and Continuous Sexual Abuse of a Child.

On June 7, 2013, Defendant was sentenced to an aggregate of 136 years in prison, suspended after fifty years, for two years of probation.

---

[1] The child victim will be referred to using a pseudonym.

1

Defendant filed a direct appeal to the Delaware Supreme Court. On February 11, 2014, the Delaware Supreme Court affirmed the convictions and sentence of the Superior Court.[2]

On December 9, 2014, Defendant filed the subject motion for postconviction relief.[3] Counsel was subsequently appointed to represent Defendant in his Rule 61 motion. Defendant's assigned Rule 61 counsel filed an Amended Motion for Postconviction Relief on November 30, 2015. In the amended motion, Defendant claims that his trial counsel was ineffective for failing to seek the suppression of his videotaped interview during which he confessed to certain unlawful acts.

After the amended Rule 61 motion was submitted, the record was enlarged[4] and Defendant's trial counsel was directed to submit an Affidavit responding to Defendant's ineffective assistance of counsel claim. Thereafter, the State filed a response to the motion and Defendant filed a reply thereto.

## FACTS

In the summer of 2011, S.B. was living with her grandmother and her grandmother's husband in a house in Wilmington. Also living in the house were S.B.'s little sister, S.B.'s Aunt, Brianna Maddox, Brianna Maddox's twenty year old boyfriend, Iziah Ashley, and their infant daughter.[5]

---

[2] *Ashley v. State,* 85 A.3d 81 (Del. 2014).
[3] See, Superior Court Docket Nos. 72 & 73.
[4] Super.Ct.Crim.R. 61(g)(1) and (2).
[5] *Ashley v. State,* 85 A.3d 81, 83 (Del. 2014); March 5, 2013 Trial Transcript, at pg. 23-24, 32-33, 40-41; March 8, 2013 Trial Transcript, at pg. 57.

In the summer of 2011, Ashley took S.B. along with several other children to a neighborhood pool. S.B. was 11 years old in 2011 and Ashley was 20 years old. S.B. developed a crush on Ashley around the time of the pool outing.[6]

Sometime around January 2012, S.B.'s mother, Renada, who had been living in Claymont with her two young sons, moved back into her mother's house (S.B.'s grandmother's house) with her two young sons.[7] S.B. had lived in her grandmother's house her entire life.[8]

In September 2011, it was brought to Renada's attention that her daughter, S.B., wrote a note of a sexual nature to Ashley.[9] She thought her daughter had a crush on Ashley and discussed with S.B. that it was okay for her to have feelings for Ashley but not okay for her to act upon them. Renada thought the matter had been cleared up.[10]

In March 2012, Renada saw a text message from S.B. to Ashley offering to have oral sex. S.B. told her mother that she had been having sexual contact with Ashley. Renada then took S.B. to the police station.[11]

In March 2012, Detective Cecilia Ashe of the Wilmington Police separately interviewed S.B. and Ashley. In S.B.'s interview, she stated that Ashley made her give him oral sex on four occasions, and that he had digitally penetrated her and touched her breasts.[12]

---

[6] March 5, 2013 Trial Transcript, at pgs. 53-58; March 8, 2013 Trial Transcript, at pgs. 58-60.
[7] *Ashley v. State,* 85 A.3d 81, 83 (Del. 2014).
[8] March 5, 2013 Trial Transcript, at pgs. 32-33, 40-41.
[9] March 5, 2013 Trial Transcript, at pgs. 25-26.
[10] March 5, 2013 Trial Transcript, at pgs. 26-27, 35.
[11] March 5, 2013 Trial Transcript, at pgs. 27-31.
[12] *Ashley v. State,* 85 A.3d 81, 83 (Del. 2014); March 6, 2013 Trial Transcript, at pgs. 89-90..

In his interview, Ashley admitted that he had touched S.B.'s chest and that he had inserted his penis in S.B.'s mouth twice.[13] It is this interview that is at issue in the subject Rule 61 motion.

The trial testimony of both S.B. and Ashley differed from their respective statements to Detective Ashe during their respective interviews in March 2012. At trial, S.B. testified that Ashley had sex with her many more times than she disclosed to Detective Ashe in her March 2012 statement.[14] S.B. testified at trial that although she told Detective Ashe she had sexual relations with Ashley only four times, in actuality, they had sex twice a week, every week, for about a year. That would amount to about 104 times.[15] S.B. testified that she did not tell Detective Ashe about these other sexual relations because she did not want to get Ashley in trouble because, at the time of her interview with Detective Ashe, she still liked Ashley.[16]

At trial, Ashley acknowledged that his statement to Detective Ashe was voluntary. He further acknowledged that in his statement he admitted to having sexual relations with S.B. twice.[17] At trial, however, Ashley claimed that his statement to Detective Ashe was not true and that, in fact, he had never had sexual relations with S.B.[18]

Ashley was arrested in March 2012 and later indicted by a grand jury on four counts of Rape in the Second Degree, one count of Rape in the Fourth Degree, four

---

[13] *Ashley v. State,* 85 A.3d 81, 83 (Del. 2014).
[14] March 5, 2013 Trial Transcript, at pgs. 60-62.
[15] March 6, 2013 Trial Transcript, at pgs. 90-91.
[16] March 5, 2012 Trial Transcript, at pg. 63.
[17] March 8, 2013 Trial Transcript, at pgs.68-69, 75.
[18] March 8, 2013 Trial Transcript, at pgs. 75-79.

4

counts of Unlawful Sexual Contact in the First Degree, and one count of Continuous Sexual Abuse of a Child. Trial was set to take place in January 2013.

Before trial, Ashley's girlfriend, Brianna Maddox along with Ashley's aunt, Robin Johnson, made contact with Renada and offered her $100 to not bring S.B. to trial. The two women presented to Renada a letter stating that she was withdrawing her cooperation and declining to testify. In exchange for signing the letter and not bringing S.B. to court, Renada was given $100.[19]

Renada did not appear for trial on January 2013 nor did she bring S.B. to trial.

Thereafter, the police discovered text messages between Ashley and Brianna Maddox referring to the letter in which Renada would withdrew her cooperation. Specifically, one of the text messages from Brianna Maddox to Ashley stated that Renada "said she will take the 150."[20]

In February 2013, the grand jury reindicted Ashley for Bribing a Witness, Interfering with a Child Witness, and Conspiracy in the Second Degree for the part he played in compensating Renada for withdrawing her cooperation and declining to testify. The State sought and received a material witness warrant for Renada, and a new trial date was set for March 2013.[21]

The trial began on March 5, 2013, and ended on March 11, 2013. Defendant was convicted of some of the charges and found not guilty of other charges, as indicated above.

---

[19] *Ashley v. State,* 85 A.3d 81, 83 (Del. 2014); March 6, 2013 Trial Transcript, at pgs. 112-120.
[20] *Ashley v. State,* 85 A.3d 81, 83-84 (Del. 2014; March 8, 2013 Trial Transcript, at pgs. 26-27.
[21] *Ashley v. State,* 85 A.3d 81, 83-84 (Del. 2014).

## DEFENDANT'S RULE 61 MOTION

In the subject Rule 61 motion, Defendant claims that his trial counsel was ineffective in failing to file a motion to suppress the videotaped interview during which he confessed to certain unlawful acts. Defendant's Rule 61 claim is that the videotaped interview violated Ashley's Sixth Amendment and due process constitutional rights. Defendant contends that his incriminating statement was the product of police coercion and was involuntary, and that trial counsel should have sought to have the statement suppressed.

### Ashley's Videotaped Interview Satisfies the Prejudice Prong of *Strickland*

At the outset and before turning to the specifics of the videotaped interview, it is important to note that, based on the verdict rendered, it is clear that the jury found Ashley's videotaped statement to be credible and convicted him of the charges he admitted to in that interview. The jury did not convict Ashley of all of the charges in the indictment. The jury did not convict Ashley of all the charges that S.B. testified had occurred.

In his interview, Ashley admitted that he had touched S.B.'s chest and that he had inserted his penis in S.B.'s mouth twice.[22] He denied having digitally penetrated S.B.[23] The jury convicted Ashley of two counts of Rape in the Second Degree and three counts of Unlawful Sexual Contact. The jury found Ashley not guilty of two counts of Rape in the Second Degree, one count of Rape in the Fourth Degree (stemming from the alleged digital penetration), one count of Unlawful Sexual Contact with a Child and one count of Continuous Sexual Abuse.

---

[22] *Ashley v. State,* 85 A.3d 81, 83 (Del. 2014).
[23] March 24, 2012 Ashley Interview, at pg. A091.

There can be no doubt that Ashley's videotaped statement played a significant factor in the verdict for all the charges which existed at the time of the interview. Of course, the additional convictions of bribing a witness, interfering with a child witness, and conspiracy in the second degree, stemmed from activities that occurred in January 2013 after the videotaped statement at issue in March 2012, and therefore, the videotaped statement was not a factor in those convictions.

In the subject Rule 61 motion, Ashley claims that his trial counsel was ineffective for not seeking the suppression of Ashley's videotaped statement. In order to prevail on an ineffective assistance of counsel claim, Defendant must meet the two-pronged *Strickland* test by showing that: (1) counsel performed at a level "below an objective standard of reasonableness" and that, (2) the deficient performance prejudiced the defense.[24] The first prong requires the defendant to show by a preponderance of the evidence that defense counsel was not reasonably competent, while the second prong requires him to show that there is a reasonable probability that, but for defense counsel's unprofessional errors, the outcome of the proceedings would have been different.[25]

In this case, given the significance that the jury attributed to Ashley's videotaped statement, the second prong of the *Strickland* test, prejudice, has been met.

The *Strickland* test is, however, a two-pronged test. The first prong requires a showing of deficient conduct, and the second prong requires a showing of prejudice. The second prong, prejudice, has been met. The determination of this motion rests, therefore, on whether Defendant has established the first prong, deficient conduct.

---

[24] *Strickland v. Washington,* 466 U.S. 668, 687-88, 694 (1984).
[25] *Id.*

<u>**Ashley's Videotaped Interview of March 24, 2012**</u>

Let us now turn to the videotaped interview of March 24, 2012.

On March 24, 2012, Defendant Iziah Ashley was interviewed by Detective Ashe at the Wilmington Police Station.[26] Ashley was asked to come to the police station and he willingly agreed to do so. [27] His mother and father dropped him off at the police station for the interview.[28] The interview lasted about 4 hours and 41 minutes. However, after about 3 hours and 21 minutes, Detective Ashe left the room and there was no further questioning about the incident. The interview started at around 6:15 p.m.

The videotaped interview was shown to the jury redacted.[29] The redacted version shown to the jury was 2 hours and 23 minutes.[30]

Before the interview began, Ashley was properly advised of his *Miranda* rights.[31] Ashley was advised that he had the right to remain silent. That anything he said could be used against him. That he had the right to talk to a lawyer and to have the lawyer with him while he was being questioned. That if he could not afford a lawyer, he was advised that one would be appointed to represent him. He was advised that he could decide at any time to exercise these rights and to not answer any questions or make any statements.[32]

Ashley advised Detective Ashe that he had previously been read his *Miranda* rights in his past, and that he agreed to waive those rights and speak to Detective Ashe.[33]

---

[26] A copy of the transcript of the March 24, 2012 interview is included in the Appendix to Defendant's Rule 61 amended motion, at pages A031-A155.

[27] March 24, 2012 Ashley Interview Transcript, at pg. A061; March 8, 2013 Trial Transcript, at pgs. 66-68; March 11, 2013 Trial Transcript, at pg. 10.

[28] March 24, 2012 Ashley Interview Transcript, at pg. A061; March 8, 2013 Trial Transcript, at pgs. 66-68.

[29] March 5, 2013 Trial Transcript, at pgs. 95-96.

[30] March 5, 2013 Trial Transcript, at pg. 96.

[31] See, March 24, 2012 Ashley Interview Transcript, at pg. A031.

[32] *Id.*

[33] *Id.*

At trial, Ashley confirmed that before the interview, he was read his *Miranda* rights- the right to have an attorney present, the right to remain silent, and the right to stop the questioning. Ashley reconfirmed that he waived those rights and voluntarily agreed to speak with Detective Ashe.[34]

Towards the beginning of the interview, Ashley consented to allow the police to obtain his cell phone from his mother's house (where he was staying) and to download all of the information from that phone.[35] He was advised that he had the right to refuse, but he gave his consent.[36] Towards the end of the interview, about 3 ½ hours later, Detective Ashe re-confirmed that Ashley had consented to allowing the police to obtain his cell phone. Ashley re-confirmed his consent.[37]

In the subject case, whether or not Ashley was deemed to be "in custody" at the time of his videotaped interview with Detective Ashe (since he came to the police station voluntarily for questioning), and whether or not it was required that he be advised of his *Miranda* rights, he was, in fact, read his *Miranda* rights, and he voluntarily agreed to waive those rights.[38]

Therefore, this court does not need to determine whether Ashley was "in custody" when he first came to the police station for questioning or whether at some point as the interview progressed it became an "in custody" interrogation. The fact of the matter remains that Ashley was read his *Miranda* rights and he voluntarily agreed to waive them

---

[34] Trial Transcript of March 8, 2013, at pgs. 68-69, 75.
[35] March 24, 2012 Ashley Interview Transcript, at pg. A092-A093.
[36] March 24, 2012 Ashley Interview Transcript, at pg. A093-A094.
[37] March 24, 2012 Ashley Interview Transcript, at pg. A152-A153.
[38] See, *State v. Sumner,* 2003 WL 21963008, at *11 (Del.Super. 2003)(the requirement to advise the defendant of his *Miranda* rights only applies when the defendant is "in custody").

9

and, at no time during the interview, did he advise Detective Ashe that the interview was at an end and he never requested counsel.

The interview, itself, can be divided into three parts. In the first part, which lasted about 1 ½ hours, the interview is relaxed and friendly. Detective Ashe and Ashley engaged in discussions about Ashley's background and his family life.

In the second part, which lasted about 1 hour, the interview became more contentious. Detective Ashe moved her chair closer to Ashley and at this point began to specifically question Ashley about the allegations. Detective Ashe vacillated between accusing Ashley of not being honest and telling him it was okay for him to have certain feelings. It is apparent from Ashley's body language along with his verbal responses that Ashley was conflicted. Ashley appeared quiet, conflicted, and ashamed.[39] During this time, Ashley either denied the allegations or remained silent.

At some point during this second part of the interview Ashley claimed that he was about to fall asleep.[40] Yet he never asked for the interview to stop and never objected to its proceeding. A few minutes later, Ashley asked if he could take a nap.[41] Again, he never terminated the interview. About 2 hours and 12 minutes into the interview, Ashley tried to stand up but Detective Ashe would not let him do so.[42] Ashley said he understood that he would not be permitted to stand for Detective Ashe's safety.[43]

It does not appear that Ashley ever felt threatened or coerced. He never requested counsel and he never directed the discontinuation of the questioning. When viewing the

---

[39] See, for example, March 24, 2012 Ashley Interview Transcript, at pg. A117 (Ashley says: "You know what? Right now I'm fighting two different egos. I got two egos. . .")
[40] March 24, 2012 Ashley Interview Transcript, at pg. A105.
[41] March 24, 2012 Ashley Interview Transcript, at pg. A106.
[42] March 24, 2012 Ashley Interview Transcript, at pg. A112.
[43] March 24, 2012 Ashley Interview at A112.

10

videotaped interview, when viewing the non-verbal cues and body language of the parties, it is clear that Ashley never had any intention to end the interview.

In the third part of the interview, at about 2 ½ hours into the interview, Ashley began to confess. During this part of the interview, Detective Ashe put her arm around Ashley in a consoling fashion.[44] Also during this part of the interview, Ashley got up from his chair and walked to the corner of the room.[45] Detective Ashe then got up from her chair and sat on a table in a non-threatening, conversational manner.[46]

During the interview, Ashley admitted that S.B. gave him oral sex twice.[47] Ashley admitted to touching S.B.'s chest.[48] Ashley denied ever digitally penetrating S.B.[49]

During the interview, Detective Ashe never raised her voice. At no point during the interview was Ashley handcuffed. Every time he asked for a bathroom break, he was given one. He asked twice, he was given two bathroom breaks.[50] Moreover, at trial, Ashley acknowledged that his videotaped statement to Detective Ashe was voluntary.[51]

### Trial Counsel Was Not Ineffective for Not Filing a Suppression Motion

Ashley contends in his Rule 61 motion that his counsel was ineffective for not seeking the suppression of his videotaped interview.

Ashley's trial counsel explained that after reviewing the videotaped statement, he determined that there was no legal basis to move to suppress it.[52] He explained that

---

[44] March 24, 2012 Ashley Interview at 2:54:46.
[45] March 24, 2012 Ashley Interview at pg. A134, approximately 2:57:27.
[46] *Id.*
[47] March 24, 2012 Ashley Interview, at pg. A135-A140 (3:07)
[48] March 24, 2012 Ashley Interview, at pg. A133-A134.
[49] March 24, 2012 Ashley Interview, at pg. A091.
[50] March 24, 2012 Ashley Interview Transcript, at pgs. A090-A091, A138- A139.
[51] March 8, 2013 Trial Transcript, at pgs.68-69, 75.
[52] Superior Court Docket No. 87- Affidavit of Defense Counsel in Response to Rule 61 Motion.

while Detective Ashe used certain interrogation techniques during her questioning, Ashley never asked to discontinue speaking with her or request an attorney.[53] Ashley's defense counsel recognized that the interrogation techniques employed by Detective Ashe had not been found by Delaware Courts to be *per se* illegal or abusive and were to be viewed on a case by case basis.[54]

In this case, Ashley's trial counsel noted that the interaction between Detective Ashe and Ashley ran the gamut from being friendly to accusatory. However, Ashley's defense counsel determined that the statement would not be excluded on a legal basis since it appeared that Ashley's waiver of his *Miranda* rights was made knowingly, intelligently and voluntarily.[55] Ashley's trial counsel recognized that "at no time during the course of this interrogation did Mr. Ashley claim that he felt threatened or coerced, request counsel or wished to discontinue questioning."[56]

Ashley's trial counsel noted that he did raise the issue of Detective Ashe's interrogation methods during his cross-examination of her at trial. Ashley's trial counsel went through, in detail, the various interrogation techniques Detective Ashe employed during her questioning of Ashley and emphasized Ashley's repeated denials that anything criminal had occurred.[57] Ashley's trial counsel also emphatically argued, during closing, that the techniques employed during Ashley's interview raised a factual question as to whether or not his admissions were true in order to create reasonable doubt as to the believability of same.[58]

---

[53] Superior Court Docket No. 87- Affidavit of Defense Counsel in Response to Rule 61 Motion.
[54] Superior Court Docket No. 87- Affidavit of Defense Counsel in Response to Rule 61 Motion.
[55] Superior Court Docket No. 87- Affidavit of Defense Counsel in Response to Rule 61 Motion.
[56] Superior Court Docket No. 87- Affidavit of Defense Counsel in Response to Rule 61 Motion.
[57] March 6, 2013 Trial Transcript, at pgs. 35-101, 104-105.
[58] Superior Court Docket No. 87- Affidavit of Defense Counsel in Response to Rule 61 Motion.; March 11, 2013 Trial Transcript, at pgs. 22-30.

As to Ashley's claim that his Sixth Amendment right to counsel was violated, this claim is without merit. Ashley voluntarily waived his Sixth Amendment right to counsel prior to the commencement of the interview and never thereafter sought to invoke it. At trial, Ashley re-confirmed that he voluntarily waived the right to counsel.[59] There is no Sixth Amendment violation when a defendant is advised of his *Miranda* rights, waives them, and never invokes his right to counsel.[60]

As to Ashley's claim of due process constitutional violations, Ashley's trial counsel correctly recognized that in Delaware the interrogation techniques employed by Detective Ashe was not *per se* illegal or abusive and must be viewed based on the totality of the circumstances of this particular case.

If a statement obtained by the police is not the product of a voluntary choice by the defendant, then the statement is inadmissible against him under the Due Process Clause of the Fourteenth Amendment.[61] The due process approach is an independent consideration when reviewing the admissibility of statements made by defendants to law enforcement officials.[62] This approach recognizes that certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned.[63]

The United States Supreme Court has held that coercive police activity is a necessary predicate to a finding that a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment.[64] It is only when there is a finding

[59] March 8, 2013 Trial Transcript, at pgs. 68-69, 75.
[60] *Turner v. State,* 957 A.2d 565, 574 (Del. 2008).
[61] *State v. Sumner,* 2003 WL 21963008, at *19 (Del.Super. 2003).
[62] *State v. Sumner,* 2003 WL 21963008, at * 19 (Del.Super. 2003).
[63] *State v. Sumner,* 2003 WL 21963008, at * 19 (Del.Super. 2003).
[64] *State v. Sumner,* 2003 WL 21963008, at *19 (Del.Super. 2003).

of "coercive police activity", that the court must then determine if the police conduct was sufficient to overcome the will of the accused, given particular vulnerabilities and the conditions of the interrogation and resulted in an involuntary statement.[65]

The question of voluntariness is a factual issue to be determined under the totality of the circumstances of the particular case at issue.[66]

In this case, Ashley voluntarily submitted to the interview. During the interview, although Ashley told Detective Ashe on one occasion that he was tired, and on another, that he wanted to take a nap, he never instructed Detective Ashe that the questioning was over and that he was invoking his right to discontinue questioning. Ashley never asked to discontinue speaking with her or request an attorney. When viewing the videotaped interview, it becomes even clearer that Ashley never had any intention to end the interview.

On one occasion, Ashley wanted to stand up, but Detective Ashe would not let him do so. Ashley did not appear to be offended, threatened or intimated in any respect. He stated that he understood that he would not be permitted to stand since it posed a safety issue. On another occasion, later on during the interview, Ashley was permitted to, and did, stand up as the interview continued.

There must first be a finding of "coercive police activity" before the court undertakes a determination as to whether that coercive police activity overcame the will of the accused and resulted in an involuntary statement. In this case, the videotaped interview was voluntary and there does not appear to be any police activity that overcame the will of Ashley in asserting any constitutional right. Ashley voluntarily waived those

---

[65] *State v. Sumner,* 2003 WL 21963008, at \*19 (Del.Super. 2003).
[66] *State v. Sumner,* 2003 WL 21963008, at \* 19 (Del.Super. 2003).

rights- the right to remain silent, the right to discontinue questioning, and the right to counsel.

The *Sumner* case, relied on by Ashley in support of his claim, is markedly different from this case. In *Sumner,* the defendant refused to sign a consent to search form and expressly requested counsel.[67] The defendant reiterated his desire to be represented by counsel and reiterated that he did not want to speak to the police at the present time.[68] The defendant expressly stated that he wanted to end the questioning.[69] In fact, as the police continued to press the defendant after he told them he was not willing to talk at the present time, he said "No means no!", pounding on the table for emphasis.[70] The defendant repeatedly asked for the questioning to end for the evening.[71]

In *Sumner*, the defendant unequivocally invoked his right to counsel and the police later resumed questioning without clarifying that defendant no longer wanted counsel.[72] The defendant was offered a drink but none was brought to him, he was denied any smoke or bathroom breaks.[73] Instead of ending the interview, the police persisted, and essentially bullied the defendant into agreeing to waive his *Miranda* rights.[74]

The *Sumner* court held that, based on the particular facts and circumstances of that case, the police failed to honor defendant's constitutional rights and negotiated away his rights. At one point, after defendant expressly insisted on his right to counsel, a police

---

[67] See, *State v. Sumner,* 2003 WL 21963008, at *2 (Del.Super. 2003).
[68] *State v. Sumner,* 2003 WL 21963008, at *4-5 (Del.Super. 2003).
[69] *State v. Sumner,* 2003 WL 21963008, at *5 (Del.Super. 2003)(police asked: "Are you telling me you don't want to talk to me" and defendant responded : "Not right now.").
[70] *State v. Sumner,* 2003 WL 21963008, at *5 (Del.Super. 2003).
[71] *State v. Sumner,* 2003 WL 21963008, at *5-7 (Del.Super. 2003).
[72] *State v. Sumner,* 2003 WL 21963008, at *18 (Del.Super. 2003).
[73] *State v. Sumner,* 2003 WL 21963008, at *21 (Del.Super. 2003).
[74] *State v. Sumner,* 2003 WL 21963008, at *5-6 (Del.Super. 2003).

officer told the defendant that he was "flabbergasted" that the defendant would want a lawyer if he was "just a friend of [the victim.]"[75]   Given the repeated violations of defendant's constitutional rights to silence and counsel, the *Sumner* court held that that defendant's due process constitutional rights were violated.[76]

The *Sumner* court held that the police engaged in a coercive and systematic attempt to negotiate away the defendant's constitutional rights leading to an admission of guilt.  The defendant's prior experience in unsuccessfully negotiating his right to silence with the police probably led him to believe that such a tiring negotiation would occur with his right to counsel, particularly in light of the police officer's earlier pronouncement that he was "flabbergasted" that the defendant would want a lawyer if he was just a friend of the victim.   The police conduct was overzealous and the totality of the circumstances surrounding the police's quest for a confession culminated in a violation of the defendant's due process constitutional rights.[77]

This case is not the *Sumner* case.   In this case, Ashley agreed to waive his *Miranda* rights and never thereafter sought to invoke them.   In this case, there was no coercive and systematic attempt to negotiate away Ashley's constitutional rights, Ashley voluntarily waived them.

In *Restrepo-Duque v. State,*[78] when the defendant was read his *Miranda* rights, the defendant asked the police, "I don't know.  What would be better?  If I talk to a lawyer."  The police responded that the decision was up to the defendant but that it would

[75] *State v. Sumner,*  2003 WL 21963008, at *21 (Del.Super. 2003).
[76] *State v. Sumner,*  2003 WL 21963008, at *15-16, 20-21  (Del.Super. 2003).
[77] *State v. Sumner,*  2003 WL 21963008, at *20-21 (Del.Super. 2003).
[78] *Restrepo-Duque v. State,* 2015 WL 9268145 (Del. 2015).

16

be nice to get the defendant's side of the story. The defendant replied, "Yeah, why not."[79] He then confessed to the murder at issue.[80]

In that case, the court held that because the defendant did not unequivocally invoke the right to counsel, the police should attempt to clarify the defendant's intention. The clarifying questions may not coerce or intimidate the defendant or otherwise discourage his effort to secure counsel, if that was his intention.[81] Although the detective's statement was probably not ideal, the statement did not exceed the bounds of clarification. The detective's statement did not coerce or intimidate the defendant and did not discourage his effort to secure counsel. The court also relied heavily on the fact that under the totality of the circumstances the interview did not appear coercive. The questioning was conversational and the defendant was not outwardly in distress – he expressly agreed to talk to the detective.[82] Thus, the *Restrepo-Duque* court held that the defendant's statement was given voluntarily, knowingly and intelligently and the police did not exceed the bounds of permitted clarification.[83]

In this case, Detective Ashe's conduct does not appear to rise to the level of coercive police activity that was designed to negotiate away Ashley's constitutional rights. Ashley's statement that he was tired, is not the same as a statement that he was discontinuing any further questioning. Ashley had unequivocally waived his right to remain silent and did not thereafter seek to invoke it. Likewise, his statement that he would like to take a nap is also not the same as advising that he was discontinuing any

---

[79] *Restrepo-Duque v. State,* 2015 WL 9268145, at * 2 (Del. 2015).
[80] *Restrepo-Duque v. State,* 2015 WL 9268145, at * 2 (Del. 2015).
[81] *Restrepo-Duque v. State,* 2015 WL 9268145, at *4 (Del. 2015).
[82] *Restrepo-Duque v. State,* 2015 WL 9268145, at * 5 (Del. 2015).
[83] *Restrepo-Duque v. State,* 2015 WL 9268145, at * 5 (Del. 2015).

further questioning. He never said, "I'm done," "It's over," or "No means no". In viewing the videotaped interview, in which the body language of the parties and other non-verbal cues can be observed, it is apparent that Ashley is not seeking, verbally or non-verbally, to end the interview.

Ashley did not equivocate as to the waiver of his *Miranda* rights- he waived them. He never appeared to be threatened or coerced. He appeared only to be wrestling with his conscience as to whether or not to confess.

Even if the interview did rise to the level of coercive police activity, under the totality of the circumstances in this case, Ashley's due process rights were not violated.

Ashley's trial counsel's determination that Ashley's statement would not be excluded on a legal basis under the facts and circumstances of this case was not deficient. Ashley has failed to meet the first prong of *Strickland* test- deficient performance. Accordingly, Ashley's claim must fail.

Defendant's request for an evidentiary hearing is denied. Following a full, comprehensive and thorough review of the evidentiary record, Defendant's allegations were either reasonably discounted as not supported by the record, persuasively rebutted by defense counsel's Affidavit, or not material to a determination of Defendant's claim. It does not appear that an evidentiary hearing will aid in the resolution of this motion and is denied.

18

For all of the foregoing reasons, Defendant's Motion for Postconviction Relief should be denied.

**IT IS SO RECOMMENDED.**

_____/s/_____
Commissioner Lynne M. Parker

oc:     Prothonotary
cc:     Dade Werb, Esquire

19