# IN THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | Crim. ID No. 2011008281 |
| | ) | |
| DARNELL ROLLINS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Submitted: December 13, 2021
Decided: December 17, 2021

*Upon Consideration of Defendant's Motion to Transfer Charges to Family Court,*
**DENIED.**

Matthew C. Buckworth, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware. *Attorney for State*.

Kimberly A. Price, Esquire, Collins & Price, Wilmington, Delaware. *Attorney for Defendant*.

**MEDINILLA, J.**

## I.  INTRODUCTION

At 16,[1] Defendant Darnell Rollins ("Defendant") stands accused of Possession of a Firearm During the Commission of a Felony (PFDCF), Possession of a Firearm by a Juvenile Prohibited, Carrying a Concealed Deadly Weapon, and three counts of Reckless Endangering First Degree.[2]  He seeks to transfer his charges to Family Court under 10 *Del. C.* § 1011.  A reverse amenability hearing was held on December 13, 2021.  Upon consideration of the parties' submissions, oral argument, and the record in this case, Defendant's Motion to Transfer Charges to Family Court must be **DENIED.**

## II.  FACTUAL AND PROCEDURAL HISTORY[3]

On November 18, 2020, the Wilmington Police Department responded to a call to investigate a shots fired incident that occurred around 2:13 p.m. in the area of 24th and Market Streets.  In a nutshell, an off-duty Wilmington Police officer observed the shots fired.  Assisting officers apprehended the suspect 1.5 blocks from the shooting, without incident.  The officers searched the individual and recovered a black and silver Smith & Wesson .40 caliber handgun from his front right jacket pocket.  Surveillance footage and ballistic evidence confirms what was observed by

---

[1] Defendant's date of birth is June 9, 2004.
[2] Indictment, True Bill No. 11, D.I. 2.
[3] This recitation is based upon oral argument and evidence presented at the reverse amenability hearing on Defendant's Motion to Transfer on December 13, 2021.

the off-duty officer where the suspect identified as Defendant is seen pointing a gun and shooting in the direction of cars and persons. During a post-*Miranda* interview, he admitted to firing the shots. Fortunately, the three victims between the ages of 11 and 14—and strangers to Defendant—were not injured. Defendant's age as a juvenile makes him a "person prohibited" from possessing a firearm.

On January 11, 2021, Family Court held a preliminary hearing and the case was subsequently transferred to this Court. Defendant was indicted by the Grand Jury on July 6, 2021. Defendant filed a Motion for Amenability Hearing on July 27, 2021. Psychological evaluations and corresponding reports on behalf of Defendant were conducted and prepared by his experts in August and December of 2021. The Court held a reverse amenability hearing on December 13, 2021.

## III. STANDARD OF REVIEW

The reverse amenability process is meant to identify juveniles charges as adults who are amenable to the rehabilitative process of the Family Court.[4] If the juvenile files a motion to transfer the adult charges, this Court must hold a reverse amenability hearing and weigh the four factors set forth in 10 *Del. C.* § 1011(b).[5] The Court may consider evidence of: (1) "[t]he nature of the present offense and the

---

[4] *See generally* 10 *Del. C.* §§ 1010-11; *see also Hughes v. State*, 653 A.2d 241, 249 (Del. 1994) (quoting *Marine v. State*, 624 A.2d 1181, 1184 (Del. 1993)); *Marine v. State*, 607 A.2d 1185, 1209 (Del. 1992)).

[5] *See*, *e.g.*, *State v. Harper*, 2014 WL 1303012, at *5–7 (Del. Super. Mar. 31, 2014).

extent and nature of the defendant's prior record, if any;"[6] (2) "[t]he nature of past treatment and rehabilitative efforts and the nature of the defendant's response thereto, if any;"[7] (3) "[w]hether the interests of society and the defendant would be best served by trial in the Family Court or in the Superior Court[;]"[8] and (4) any "other factors which, in the judgment of the Court are deemed relevant."[9]

## IV.   DISCUSSION

### A. Fair Likelihood of Conviction

Before weighing the § 1011(b) factors, "this Court must preliminarily determine whether the State has made out a *prima facie* case against the juvenile"[10] to consider "whether there is a fair likelihood that [the defendant] will be convicted of the crimes charged."[11]  The State has made out its *prima facia* case as to all charges.  Defendant admits to the charged conduct of discharging a firearm (PFDCF.)  Three victims were present at the time of the shooting to establish the Reckless Endangering counts.  The firearm was concealed when he was apprehended to establish the Carrying Concealed Deadly Weapon charges, and as a juvenile, he cannot possess a firearm in the State of Delaware.

---

[6] 10 *Del. C.* § 1011(b)(1).
[7] *Id.* § 1011(b)(2).
[8] *Id.* § 1011(b)(3).
[9] *Id.* § 1011(b).
[10] *Harper*, 2014 WL 1303012, at *5 (citing *Marine*, 624 A.2d at 1185).
[11] *Id.*

Moreover, the Court cannot exercise discretion for the PFDCF charge.  By Defendant's own admission that he fired the weapon, the State has established its burden to have Defendant tried as an adult.[12]  Defendant concedes as much but he asks the Court to consider whether the remaining charges may return to the Family Court.  For the reasons set forth, the charges must remain here.

## B. Weighing § 1011(b)'s Four Factors

### 1. Section 1011(b) Factor One: Nature of Present Offense and the Extent and Nature of Defendant's Prior Record

The first § 1011(b) factor is two pronged.[13]  All charges against Defendant are serious in nature and weigh against transfer.  As to the second prong, his prior record, Defendant's prior adjudications, including violent offenses, have escalated in nature.[14]  Defendant has a pending charge for Assault in a Detention Facility with Physical Injury.  This factor weighs against transfer.

---

[12] 11 *Del. C.* § 1447A(f) ("Every person charged under this section over the age of 16 years who, following an evidentiary hearing where the Superior Court finds proof positive or presumption great that the accused used, displayed, or discharged a firearm during the commission of a Title 11 or a Title 31 violent felony as set forth in § 4201 (c) of this title, shall be tried as an adult, notwithstanding any contrary provisions or statutes governing the Family Court or any other state law. The provisions of this section notwithstanding, the Attorney General may elect to proceed in Family Court.").

[13] *See* 10 *Del. C.* § 1011(b)(1).

[14] On July 1, 2019, Defendant was adjudicated delinquent of Robbery Second and Receiving Stolen Property.  On December 16, 2019, Defendant was adjudicated delinquent for Offensive Touching and Disorderly Conduct.

## 2. Section 1011(b) Factor Two: Nature of Past Treatment and Defendant's Response

For two years, from 2017 to 2019, Defendant responded well to treatment. For the last two, he has not. While at Snowden Cottage following his 2019 adjudication of delinquency, Defendant experienced multiple behavioral issues. After a group altercation, Defendant was removed from Snowden Cottage and transferred to New Castle County Detention Center (NCCDC) where he exhibited violent and threatening conduct. During *this* detention, he again experienced multiple behavioral issues at NCCDC and was eventually transferred to Stevenson House Detention Center (Stevenson). At Stevenson, Defendant was again involved in several altercations, one resulted in pending criminal charges. For these reasons, Ronald Thomson, Jr., a Senior Family Services Specialist, Juvenile Probation Officer testified for YRS that Defendant is non-amenable to its services.

On the other hand, finding Defendant amenable, the Court considered the testimony of Dr. Laura Cooney-Koss, Psy. D. and the reports of both Drs. Cooney-Koss[15] and Nicole Kelly Walker, Psy. D.[16] Both opined that Defendant is amenable to the services of the Family Court. Dr. Cooney-Koss testified that Defendant's "struggles are rather pervasive"[17] due to low verbal ability, neurological immaturity,

---

[15] *See* Psychological Evaluation by Laura Cooney-Koss, Psy.D. (Dec. 1, 2021).
[16] *See* Psychological Evaluation by Nicole Kelly Walker, Psy.D. (Aug. 20, 2021).
[17] Psychological Evaluation by Laura Cooney-Koss, Psy.D., at 5 (Dec. 1, 2021).

and various psychiatric symptoms.[18]  She believes Defendant requires both psychiatric and therapeutic intervention which can best be provided by the Family Court.[19]

Both Officer Thompson and Dr. Cooney-Koss testified that perhaps lack of medication and his family's inability/refusal to obtain necessary services for Defendant since age 12 has likely contributed to his behavior.  And perhaps this explains his multiple instances of aggressive behavior.  Giving him the benefit of the doubt, this Court finds this factor weighs in favor of transfer where it has been demonstrated that he was successful while on community supervision and when his medication regimen changed during his detention, he has responded favorably to treatment.  However, this is not sufficient to transfer the case to Family Court.

### 3.  Section 1011(b) Factor Three: Interest of Society and Defendant

The Court accepts the opinion of Dr. Cooney-Koss that "[Defendant's] needs and the interests of society would be best served by transferring his case to the Family Court System."[20]  Defendant has demonstrated improvement with a change of medications.

The Court was most impressed that despite Defendant's involvement with all three divisions from the Department of Services for Children, Youth & Their

---

[18] *Id.* at 4–5.
[19] *Id.* at 5.
[20] *Id.* at 6.

7

Families, at age 17.5, he has earned his high school degree. Given the adverse childhood events including educational obstacles and domestic violence, he demonstrates the capacity to learn.

Given his diagnoses, and the unrebutted opinions of two psychological evaluators, Defendant could benefit from approximately 1.5 years of programming through a Level V juvenile rehabilitation facility such as the Ferris School. He could further be provided with community supervision to age 21. With programing, perhaps there would be time in Family Court. However, given his age and the firearm charge, the last factor prevents the charges from transferring back to Family Court.

### 4. Section 1011(b)'s Catchall Provision: Any Factors Deemed Relevant

Here, the Court does the math. Defendant admitted that he discharged the firearm. He was over 16 years when he did so. Therefore, the law mandates he be tried as an adult offender for PFDCF. Currently 17.5 years old, if convicted on the firearm charge, Defendant faces the minimum mandatory incarceration period of 3 years, beyond his 19th birthday. Thus, he "will not be spared adult court proceedings in any event, regardless of the merit of the companion charges and the prospect for rehabilitation."[21]

---

[21] *State v. Anderson*, 697 A.2d 379, 384 (Del. 1997).

Accordingly, basic principles of joinder under Superior Court Criminal Rule 8 lead this Court to conclude that the Reckless Endangering charges are inextricably intertwined with his firearm charge.[22] It is illogical to ask a jury to hear the firearm charge without considering the accompanying felonies. And judicial economy leads to the conclusion that all charges should remain in one court.[23]

## V. CONCLUSION

Where this Court is bound under 11 *Del. C.* § 1447A(f) to retain jurisdiction over the firearm charge, under § 1011(b), the factors weigh against transfer. For the reasons stated above, Defendant's Motion to Transfer Charges to Family Court must be **DENIED**.

**IT IS SO ORDERED.**

/s/ Vivian L. Medinilla
Judge Vivian L. Medinilla

oc:    Prothonotary

---

[22] *See* SUPER. CT. CRIM. R. 8(a) (permitting the joining of offenses when "connected together or constituting parts of a common scheme or plan.").

[23] *See Ashley v. State*, 85 A.3d 81, 85 (Del. 2014) (citing *Mayer v. State*, 320 A.2d 713, 717 (Del. 1974).