**David C. BETHARD, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 304, 2010.

Supreme Court of Delaware.

Submitted: Feb. 2, 2011.
Decided: Feb. 9, 2011.

---

119. *Belmontes*, 130 S.Ct. at 387.

120. *Wiggins*, 539 U.S. at 534, 123 S.Ct. 2527.

121. *Belmontes*, 130 S.Ct. at 390–91.

E. Stephen Callaway and Bernard J. O'Donnell (argued), Office of the Public Defender, Georgetown, Delaware, for appellant.

John Williams, Department of Justice, Dover, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

STEELE, Chief Justice:

David Bethard appeals from a Superior Court judge's denial of his Motion for a Judgment of Acquittal on the charge of aggravated menacing. Bethard asserts that insufficient evidence supports the charge. Bethard contends that although Captain Simpson of the Delaware State Police may have had a subjective belief that Bethard had a weapon, Bethard never objectively manifested a weapon during their altercation. Because Simpson's testimony established: (1) his subjective belief that Bethard was armed and (2) an objective manifestation of a weapon, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

On August 2, 2009, David Bethard got into an argument with his wife, Cherry Esslinger. The argument escalated and Bethard eventually went to the kitchen, retrieved several kitchen knives, and began striking them on his arm in an attempt to injure himself. In the process, he told Esslinger that he was going to have the police hurt him in front of her so that she would have to see it and then live with the experience.

During the argument, Esslinger's daughter, Tiffany Fithian, and her boyfriend, Gary Call, returned home. According to Esslinger, Bethard began threaten-

ing all of them with a knife and he began "ranting and raving about something that just didn't make any sense," while continuing to say that he was going to get hurt. Fithian asked Bethard to leave the house and threatened to call the police.

Eventually, Esslinger left the house with Bethard in order to defuse the situation. They drove away from the house. When Esslinger attempted to get out of the car at a stoplight on Route 1, Bethard kept driving in order to prevent her from getting out. As they continued driving, they continued arguing. When Bethard stopped the car at a stop sign, Esslinger managed to get out of the car and run away. Bethard pursued her, and after he caught her, they continued arguing in a random front yard on Retz Lane until Delaware State Police Captain Charles Simpson arrived.

Simpson testified that he received a text message alerting him to an armed kidnapping in progress, and he responded to the notification. Simpson, a 30–year police veteran who was off-duty at the time, saw Bethard and Esslinger in the Retz Lane front yard as he drove up the street in an unmarked vehicle. After Simpson stopped his car and got out, Esslinger approached him. According to Simpson's testimony, she told him, "He [Bethard] kidnapped me. He said he was going to kill me. He has a weapon." Esslinger testified that she never said that to Simpson, but instead told him that Bethard was unarmed and suicidal.

After Esslinger approached Simpson, Bethard continued walking around the yard with his hand in his pocket. Simpson testified that, with his gun drawn, he told Bethard to take his hand out of his pocket, raise his hands in the air, and get on his knees. According to Simpson, Bethard re-

sponded by refusing to comply and stating, "That's not going to happen today. It's absolutely not going to happen today." Simpson repeated the orders, and Bethard repeated his statements. Bethard then began to approach Simpson with his hand still in his pocket. Bethard told Simpson, "I have something for you, and I'm going to bring it to you." According to Simpson, when Bethard was about six to eight feet away, he said to Simpson, "Here I come. I told you, I got it for you and this is it." At that point, according to Simpson, Bethard turned his back toward Simpson and then turned back to face him, lunged at him, and pulled his hand quickly from his pocket holding a "dark object." Simpson shot him with a single bullet. Simpson testified that at the time he fired, he believed that Bethard had a weapon and that he had one last chance to do something to protect himself. The "weapon" turned out to be Bethard's cell phone.

At the close of the State's case in chief, Bethard moved for a judgment of acquittal on the aggravated menacing charge. He contended that the State had produced insufficient evidence that he had "displayed" an object that appeared to be a deadly weapon. The judge denied his motion. At the end of the trial, the jury convicted Bethard of aggravated menacing and other charges not relevant to this appeal. Bethard now appeals the aggravated menacing conviction, arguing primarily that insufficient evidence supported the trial judge's denial of his Motion for a Judgment of Acquittal.

## II. ANALYSIS

We review *de novo* a trial judge's denial of a defense motion for a judgment of acquittal.[1] Specifically, we must determine "whether any rational trier of fact,

1. *Winer v. State,* 950 A.2d 642, 646 (Del. 2008).

after considering the evidence in the light most favorable to the State, could have found the essential elements of the crime beyond a reasonable doubt."[2]

According to 11 *Del. C.* § 602(b), "a person is guilty of aggravated menacing when by displaying what appears to be a deadly weapon that person intentionally places another person in fear of imminent physical injury."[3] That provision enhances the general menacing statute in cases where a person uses or displays a deadly weapon.[4]

This Court clearly addressed the statutory meaning of the phrase "displays what appears to be a deadly weapon" in *Word v. State*.[5] In that case, Word appealed his conviction for first degree robbery, arguing that although he passed the teller a note stating "I am armed," he did not "display what appear[ed] to be a deadly weapon."[6] In *Word*, we made clear that the statutory language "displays what appears to be a deadly weapon" requires a complainant to subjectively believe that the defendant had a deadly weapon and the defendant to have objectively physically manifested a weapon.[7] In *Word*, it was not enough that Word simply passed the teller the note when the teller testified that she did not hear a "thud" when Word placed his bag on the counter, she did not believe the bag looked heavy, and she could not remember if Word's hand was in the bag.[8] Contrarily, in *Deshields v. State*,

it was sufficient that the robbery defendant had reached under his t-shirt and belt with his hand and pointed something heavy and bulky at the clerk from beneath his shirt.[9]

■ In this case, Simpson testified that he had received a text message stating that a woman had been kidnapped at knifepoint. He testified that when he arrived at the scene, Esslinger ran up to him, visibly upset, and said about Bethard, "He kidnapped me. He said he was going to kill me. He has a weapon." Simpson testified that despite repeated orders to Bethard to take his hand out of his pocket and drop to his knees, Bethard steadfastly refused to remove his hand from his pocket and continued to make vaguely threatening statements. Simpson also testified that Bethard turned his back on Simpson before facing and lunging at Simpson in one swift motion while quickly pulling a "dark object" from his pocket. Simpson said that he believed Bethard to have been armed.

■ Considering this testimony in the light most favorable to the State, as we must on appeal and as a trial judge must upon a motion for a judgment of acquittal, we hold that a rational trier of fact could have found Bethard guilty beyond a reasonable doubt of aggravated menacing and it was proper for the trial judge to deny the motion for a judgment of acquittal and

2. *Id.*

3. 11 *Del. C.* § 602(b) ("A person is guilty of aggravated menacing when by displaying what appears to be a deadly weapon that person intentionally places another person in fear of imminent physical injury. Aggravated menacing is a class E felony.").

4. *See* 11 *Del. C.* § 602(a) ("A person is guilty of menacing when by some movement of body or any instrument the person intentionally places another person in fear of imminent

physical injury. Menacing is an unclassified misdemeanor.").

5. 801 A.2d 927 (Del.2002).

6. *Id.* at 929.

7. *Id.* at 931. *See also Deshields v. State*, 706 A.2d 502, 507 (Del.1998).

8. *Word*, 801 A.2d at 928.

9. *Deshields*, 706 A.2d at 505.

allow the case to proceed to the jury. The testimony establishes Simpson's subjective belief that Bethard possessed a weapon. Also, Bethard's decision to conceal his hand in his pocket and then lunge at Simpson from six to eight feet away while withdrawing a "dark object" quickly from his pocket constituted an objective physical manifestation of a deadly weapon. It is immaterial that Simpson's testimony is, in part, contradicted by other witnesses' testimony because the trier of fact is "the sole judge of credibility of the witnesses and is responsible for resolving conflicts in the testimony." [10] More importantly, when facing a motion for a judgment of acquittal, a trial judge must consider the evidence in the light most favorable to the State.

Bethard contends that the judge committed error by misapplying the central legal precept in this case. Specifically, Bethard argues that while *Word* articulates a two prong standard in cases like this, the trial judge, when denying the motion for judgment of acquittal, erroneously based his denial solely upon the subjective prong without articulating the objective prong. The transcript reveals that the trial judge did clearly articulate his consideration of the subjective prong,[11] but it is unclear whether the judge articulated his consideration of the objective prong.[12] Ultimately, it does not matter because on appeal we examine the record *de novo* for sufficient evidence that a rational jury could find Bethard guilty of aggravated menacing beyond a reasonable doubt. Here, the trial judge articulated the subjective prong and, whether he appropriately articulated the objective prong or not,

the record provides sufficient evidence of an objective physical manifestation for the trial judge appropriately to deny the motion for judgment of acquittal.

## III.   CONCLUSION

The trial judge did not erroneously deny Bethard's Motion for a Judgment of Acquittal on the aggravated menacing charge because the State presented sufficient evidence for a rational jury to find Bethard guilty beyond a reasonable doubt. The judgment of the Superior Court is affirmed.

---

**10.** *Knight v. State*, 690 A.2d 929, 932 (Del. 1996).

**11.** Transcript at C–3 ("[H]e believed it to be a weapon.").

**12.** Transcript at C–6 (citing *Word* and explaining that when a court considers the critical statutory language, "[it should consider 'displays'] from the perception of the victim, and there is sufficient evidence from which a jury could find that has been established").