IN THE SUPREME COURT OF THE STATE OF DELAWARE

CONDEE COKER, § 
 § No. 273, 2022
  Defendant-Below, §
  Appellant, § Court Below—Superior Court
 § of the State of Delaware
  v. §
 § ID No.: 2011011881(K)
STATE OF DELAWARE, §
 §
  Appellee. §

Submitted: May 17, 2023
Decided: July 19, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **ORDER**

This 19th day of July, 2023, after consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) On November 25, 2020, the night before Thanksgiving, Condee Coker was cooking food on the stove before she went to work the overnight shift (11 P.M. to 7 A.M.) at the Delaware Hospital for the Chronically Ill in Smyrna. Coker and her three sons lived in the first-floor unit of a two-story apartment located at 717 Talon Court in Smyrna. That evening, Coker left her sons—an eight-month-old, an eighteen-month-old, and a three-year-old—at home unattended and clocked into work at 11 P.M. The stove was still on when Coker left the apartment, and the food she was cooking caught on fire while she was at work.

(2)     Early on November 26, at 2:12 A.M., Coker's upstairs neighbor called 911. Soon after, firefighters from the Smyrna Fire Department arrived at Coker's apartment and broke down the door. When the firefighter in charge, Robert Dwayne Newnam, stepped into the apartment, he saw Coker's three-year-old son standing before him. Although there was no structural fire, the apartment was filled with smoke. The firefighters evacuated the three-year-old and then discovered and evacuated an infant inside a crib in the living room and another child in a bedroom in the back of the apartment. They had to force open the door to the back bedroom, because it was missing a handle. The children did not suffer any observable injuries. The firefighters determined that the source of the smoke was a pot of burning food on the stove. They removed the smoldering pot from the apartment and then used powerful fans to clear the smoke.

(3)     Coker received a call about the fire, clocked out of work early at 2:32 A.M., and rushed home. At the scene, Officer Evans Leighty of the Smyrna Police spoke with Coker while his body camera was recording. He asked Coker why the children were home alone, and Coker told him that she had gone out briefly to get "wipes" for the children. She did not disclose that she had been at work. Coker told the officer, however, that she had forgotten to take the pot off the stove. When

2

Officer Leighty informed Coker that he would be contacting the Division of Family Services, she said, "I'm sorry."[1]

(4) Four days later, on November 30, Coker was interviewed by Detective William Davis at the Smyrna Police Department. Coker, who was Mirandized, eventually admitted that she was working on the night of November 25, after Detective Davis revealed that he had employment records showing that Coker clocked into work at 11 P.M. Coker agreed that it was not right to leave her children alone, but she told Detective Davis that she had hoped that the children's father would supervise while she was away, stating that "when he can, he will."[2] The children's father, however, worked in Newark until midnight—an hour after Coker was supposed to clock into work herself—and Newark is at least a 25–30-minute drive from Coker's home. During the interview, Detective Davis also asked Coker why the stove was turned on. She explained, "That's me. I forgot (inaudible) and came up (inaudible) come back in the morning and do the cooking, so I forgot."[3]

(5) In June 2021, Coker was indicted on three counts of reckless endangering in the first degree—one count for each of her children. Her case went to trial in April 2022. At trial, the State called Newnam, the firefighter in charge of quelling the fire. He testified that a lack of oxygen in the apartment caused the

---

[1] App. to Opening Br. at A113.
[2] State's Ex. 12 at 5–6.
[3] *Id.* at 7.

burning food in the pot to smolder but that it was still "producing a lot of smoke."[4] According to Newnam, his "eyes were watering" during the rescue, and there was enough smoke in the apartment to "cause somebody some difficulty to breathe."[5] The State's next witness, Detective Davis, testified about his November 30 interview with Coker. After the State introduced Coker's employment records, Detective Davis testified that Coker agreed that she had clocked into work at 11 P.M. on November 25 and clocked out at 2:32 A.M on November 26.[6] Then, Officer Leighty, who was present for Detective Davis's testimony, testified that Coker's statement on the scene—that she had gone out briefly to buy "wipes"— was inconsistent with her later statement to Detective Davis concerning her shift on November 25–26.[7]

(6)     After the State's case-in-chief, Coker moved for judgment of acquittal, arguing that no evidence had been offered showing that Coker knew that the stove was on and that there was a hazardous condition in the apartment that could create death or injury. Drawing all inferences in the light most favorable to the State, the court denied the motion, ruling that "[a] rational trier of fact here could find Ms. Coker's conduct reckless, entirely distinct and apart from the factual issue of the pot on the stove[,]" because Coker "knew she left three [young] children unattended

---

[4] App. to Opening Br. at A50, A58.
[5] *Id.* at A50.
[6] A recording of the police interview was played for the jury at trial.
[7] Video from Officer Leighty's body camera was played for the jury at trial.

in an apartment" where "any number of calamities" could befall them.[8]  Clarifying its ruling, the court stated, "[e]ven if the issue of Ms. Coker's knowledge of the pot" was case-dispositive, "credibility determinations regarding Ms. Coker's statements and knowledge regarding the pot and stove are reserved for the finder of fact."[9]

(7)  Coker did not put on a defense at trial.  After resting her case, she renewed her motion for judgment of acquittal, arguing that "[t]he State has failed to prove that the Defendant was aware of any hazardous condition in that apartment that would result in the children's death or that would result in physical injury to the children."[10]  The Superior Court denied Coker's renewed motion for the same reasons as before.  Coker's counsel then advised the court that he would object during the State's closing argument to "any reference to any hazard in [Coker's] apartment that was not entered at trial as evidence . . ."[11]  The State asked the court for a ruling to avoid such objections, and the court ruled that the State could argue reasonable inferences about the hazards in the apartment, noting that leaving three small children under the age of four unsupervised in an apartment was, "in and of itself, a hazard."[12]

---

[8] App. to Opening Br. at A146.
[9] *Id.* at A146–47.
[10] *Id.* at A160.
[11] *Id.* at A185.
[12] *Id.* at A186–87.

(8)     In its closing argument, the State argued that Coker's statements to the police that she forgot to turn off the stove were not credible.  The State also argued that Coker was aware of and disregarded the risk of cooking and the potential risks associated with leaving three very young children alone in an apartment.  It urged the jury to use its "common sense when considering what could have happened to those three children[,]" arguing, among other things, that Coker's three-year-old son was roaming around the apartment and could have done damage to himself or his siblings.[13]   Thereafter, the jury found Coker guilty on three counts of reckless endangering in the first degree.  She was sentenced to probation.[14]

(9)     On appeal, Coker argues that the Superior Court adopted an erroneous "*per se* principle that leaving three children under the age of four unsupervised in an apartment at night is reckless."[15]  She claims that the act of leaving a child unattended is not reckless without evidence "relevant to the question whether the defendant consciously disregarded a substantial and unjustifiable risk[.]"[16] She also contends that the State failed to establish that Coker consciously disregarded a

---

[13] *Id.* at A211.

[14] On July 13, 2022, Coker received concurrent sentences for each conviction and was placed in the custody of the Department of Corrections for five years at supervision level V, suspended for eighteen months at supervision level III.  She was also ordered to participate and complete parenting classes and take all medications as prescribed.  She cannot have unsupervised contact with her children.  The sentence review date was scheduled for eight months later. Ex. D.

[15] Reply Br. at 1.

[16] Second Corrected Opening Br. at 19 (quoting *Commonwealth v. Costa*, 148 N.E. 3d 1211, 1216 (Mass. App. Ct. 2020)).

substantial risk of death created by the pot of burning food, because Coker told the police that she forgot that the stove was on when she left the apartment.

(10)   This Court reviews a trial judge's denial of a defense motion for judgment of acquittal *de novo*.[17]  "Specifically, we must determine 'whether any rational trier of fact, after considering the evidence in the light most favorable to the State, could have found the essential elements of the crime beyond a reasonable doubt.'"[18]  In making this determination, the Court does not "distinguish between direct and circumstantial evidence[.]"[19]

(11)   We note that Coker's argument on appeal appears to be focused on part of the trial court's ruling—that the conclusion could be reached exclusive of Coker's knowledge about the stove—but the trial court clarified that credibility determinations regarding Coker's statements and knowledge about the pot and stove were for the jury to decide.  Because our review is *de novo*, we are not confined to the trial judge's reasoning or required to determine whether, "exclusive of Ms. Coker's knowledge of the pot," Coker consciously disregarded a substantial risk of death.  Stated differently, we may consider the totality of the evidence, including the smoldering pot and the length of time Coker intended to be away from the children.

---

[17] *Bethard v. State*, 28 A.3d 395, 397–98 (Del. 2011).
[18] *Id.* (quoting *Winer v. State*, 950 A.2d 642, 646 (Del. 2008)).
[19] *Lum v. State*, 101 A.3d 970, 971 (Del. 2014).

(12) Under 11 *Del. C.* § 604, "[a] person is guilty of reckless endangering in the first degree when the person recklessly engages in conduct which creates a substantial risk of death to another person."[20] According to the Delaware Criminal Code's definitions relating to state of mind, "[a] person acts recklessly . . . when the person is aware of and consciously disregards a substantial and unjustifiable risk" and the risk is "of such a nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[21]

(13) As noted above, the jury was free to find Coker's statement—that she forgot to turn off the stove—not credible. Viewing the facts in a light most favorable to the State, a legitimate inference could be drawn that Coker turned on the stove and left it on to pre-cook the Thanksgiving meal while she worked an eight-hour shift, leaving her three small children—the oldest three years old and the youngest an infant—unattended. This conduct, it seems self-evident to us, "constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[22]

(14) The only colorable defense—and its color is questionable—is that Coker's reckless conduct did not create a substantial risk of death to her unattended

---

[20] Reckless endangering in the second degree is an identical crime, except the risk to the victim is "physical injury" rather than "death." 11 *Del. C.* § 603.
[21] 11 *Del. C.* § 231(e).
[22] *Id.*

8

children. Although "'[s]ubstantial risk of death' is not defined in the Delaware Criminal Code, . . . [the phrase] is accorded 'its commonly accepted meaning.'"[23] In the present context, we view "substantial" as meaning "real and not imaginary, having actual, not fictitious, existence."[24] Moreover, in *Hastings v. State*, a case involving the charge of reckless endangering in the first degree, we explained that a "substantial risk of death" does not require an "imminent threat" of death.[25] Applying these principles, a rational factfinder, viewing the facts in the light most favorable to the State, could find beyond a reasonable doubt, that Coker's conduct, in turning on the stove and then leaving her very young children at home alone while she went to work, created a substantial risk of death to her children, which Coker consciously disregarded by failing to turn off the stove and leaving the children unattended.

(15) Coker also claims on appeal that the court abused its discretion by ruling that the State could refer to reasonable inferences in its closing argument about the hazards in the apartment, including the "hazard" of leaving three young children unsupervised in an apartment. She contends that the State should not have been allowed to argue that potential dangers that generally pose a risk to unattended

---

[23] *Eaton v. State*, 751 A.2d 878, 2000 WL 628330, at *2 (Del. Apr. 28, 2000) (TABLE) (quoting 11 *Del. C.* § 221(c)).

[24] *Substantial*, BLACK'S LAW DICTIONARY (11th ed. 2019). *See Substantial*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/substantial (last visited May 16, 2023) ("not imaginary or illusory").

[25] 289 A.3d 1264, 1271 (Del. 2023).

young children were "substantial and unjustifiable risks" that Coker was "aware of and consciously disregarded."[26]

(16) In Delaware, counsel is permitted "a certain flexibility in presenting zealous jury argument."[27] The prosecutor "is allowed and expected to explain all the legitimate inferences of the [defendant's] guilt that flow from that evidence."[28] "Therefore, unless we find a clear abuse of discretion or undue prejudice to the defendants, we will not interfere with the Trial Court's determination as to the proper bounds of closing argument."[29]

(17) Coker's state of mind was a central issue in this case. The jury was permitted to draw an inference about Coker's state of mind from the facts and circumstances.[30] In drawing such an inference, the jury could consider whether a reasonable person in Coker's circumstances would have had the required intention, recklessness, knowledge, or belief.[31] The evidence clearly established that Coker

---

[26] Second Corrected Opening Br. at 24.

[27] *Money v. State*, 957 A.2d 2, 2008 WL 3892777, at *3 (Del. Aug. 22, 2008) (TABLE).

[28] *Hooks v. State*, 416 A.2d 189, 204 (Del. 1980).

[29] *Burke. v. State*, 484 A.2d 490, 498 (Del. 1984), *abrogated by Crawford v. Washington*, 541 U.S. 36 (2004) on different grounds.

[30] *See Deputy v. State*, 500 A.2d 581, 597 (Del. 1985) (noting that "the problems involved in proving the existence of a person's state of mind necessitate some reliance on circumstantial evidence").

[31] 11 *Del. C.* § 307 (a) ("The defendant's intention, recklessness, knowledge or belief at the time of the offense for which the defendant is charged may be inferred by the jury from the circumstances surrounding the act the defendant is alleged to have done. In making the inference permitted by this section, the jury may consider whether a reasonable person in the defendant's circumstances at the time of the offense would have had or lacked the requisite intention, recklessness, knowledge or belief.").

consciously decided to leave her three very young children unattended for an extended period. That this posed a very grave risk of harm to the children was borne out by what the firefighters discovered when they responded to Coker's apartment: a three-year-old child wandering about in a smoke-filled apartment. Given these facts, we reject Coker's claim that the trial court abused its discretion by permitting the State to refer in closing argument to the myriad harms that could have befallen the children as a consequence of Coker's recklessness.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

11